# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-01371-SCT

*UNIVERSITY OF MISSISSIPPI MEDICAL CENTER*

*v.*

*MELBA POUNDERS*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/18/2006 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ANASTASIA G. JONES |
| | JAMES A. BECKER, JR. |
| | COREY DONALD HINSHAW |
| ATTORNEY FOR APPELLEE: | GEORGE F. HOLLOWELL, JR. |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 12/06/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., DICKINSON AND LAMAR, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1.    This is a Mississippi Tort Claims Act[1] suit filed against the University of Mississippi Medical Center ("UMC").  The court awarded the plaintiff $150,000, together with pre-judgment interest.  We affirm the award of damages, but reverse the award of pre-judgment interest.

---

[1]Miss. Code Ann. § 11-46-1 et seq.  (Rev. 2002).

## BACKGROUND FACTS AND PROCEEDINGS

¶2.     On April 12, 1998, Melba Pounders was admitted to UMC, complaining of difficulty in walking and maintaining balance.  A magnetic resonance imaging scan (MRI) revealed a brain tumor as the cause of her physical problems.  After the tumor was surgically removed, Pounders seemed to be recovering well.  Although she had no problem breathing, she experienced some difficulty swallowing.  She underwent a chest X-ray, which indicated that her lungs were normal.  Due to her difficulty with swallowing and the risk of aspiration, Pounders was given a feeding tube for nutrition.  She was transferred from the intensive care unit to a regular hospital room on April 16, 1998.

¶3.     According to the testimony of several witnesses, Pounders was alert, oriented, talking, and in good spirits between April 16 and April 19.  She was scheduled to be discharged from the hospital and admitted to the Methodist Rehabilitation Center within a few days.

¶4.     On April 19, Danny Teague, an employee of UMC, escorted Pounders from her room to the ultrasound department.  Although Pounders was receiving oxygen at the time, Teague had no training in transporting patients who were receiving oxygen, nor had he received training in how to connect or disconnect a patient's oxygen apparatus.

¶5.     When Pounders returned from the ultrasound department, Jerry and Barbara Gibson and Pounder's husband, Gorman Pounders, were waiting in her room.  According to these witnesses, Teague put the humidifier bottle, which was connected to Pounders's oxygen line, on the bed.  The humidifier bottle turned upside down, allowing water to enter the oxygen line.  When Gorman Pounders realized water was running into his wife's nose and mouth, he removed the nasal tube to stop the water from continuing to run into her body.

2

¶6.    Later that night, a nurse attempted to suction the water from Pounders's lungs. Although this attempt appeared to be successful in part, Pounders still experienced respiratory distress. On April 21, Pounders suddenly developed a fever. A chest x-ray revealed that she had contracted pneumonia. Her conditioned worsened, and she was transferred back to the ICU for treatment. At this time, oxygen saturation tests showed that her lungs were deprived of oxygen.

¶7.    Pounders filed suit against UMC alleging medical negligence. At trial, Dr. Ravi Pande, a neurologist, testified that when sterile water passes through the throat and oral areas, it becomes unsterile and contaminated with bacteria, and if water contaminated with bacteria enters a patient's lungs, it can cause aspiration pneumonia. Dr. Pande testified that, to a reasonable degree of medical certainty, Pounders aspirated some of the liquid that got into her oxygen tube, and the aspiration of this fluid caused her pneumonia. Dr. Pande explained that, although other factors related to her surgery and medication made her more susceptible to developing pneumonia, the aspiration was the event which triggered the pneumonia.

¶8.    UMC's expert, Dr. William Pinkston, disagreed. He opined that complications from surgery, rather than the aspiration of fluid, caused the pneumonia. Dr. Pinkston admitted, however, that the high fever and low oxygen saturation Pounders experienced were symptoms of respiratory distress. In a bench trial, Judge Winston Kidd found Dr. Pande's opinions were more consistent with the medical records and other evidence, and determined that UMC was negligent in its care of Pounders.

¶9.    The trial court then addressed damages. Dr. Pande testified that as a result of aspirating the fluid, Pounders's condition deteriorated, she developed pneumonia, and her

3

treatment took longer than it otherwise would have. He also testified to the amount of her medical bills at the time of the alleged incident and the increase in her bills as a result of her pneumonia. In addition, evidence was presented that before the incident, Pounders was doing well and was about to be released from the hospital.

¶10. After the incident, Pounders was readmitted to ICU, was treated with antibiotics, underwent a tracheotomy, was placed on a ventilator, experienced pain and discomfort, and feared that she would lose her life. The trial court found that prior to the incident, Pounders incurred only $38,000 in medical bills. After the incident, her medical bills increased to $152,000. In addition, her medical records indicate that she was in considerable pain following the incident, and that she was prescribed powerful pain medications. The trial court found that because Pounders was about to be discharged from the hospital before the incident, her increased medical bills and pain were a direct result of the incident. The court awarded Pounders damages in the amount of $150,000 plus legal interest from the date of judicial demand. After being denied relief through post-trial motions, UMC appealed.

**ANALYSIS**

**I.**

¶11. In bench trials, a circuit judge's findings are subject to the same standard of review as those of a chancellor. *Kight v. Sheppard Bldg. Supply, Inc.*, 537 So. 2d 1355, 1358 (Miss. 1989). Accordingly, the standard of review is the manifest error/substantial evidence rule. *Miss. State Tax Comm'n v. Med. Devices*, 624 So. 2d 987, 989 (Miss. 1993). UMC argues that the findings of fact and conclusion of law adopted by the trial court were copied virtually verbatim from the proposed findings of fact submitted by the Plaintiff, and thus, a

4

heightened level of scrutiny should apply. *Kerr-McGee Chem. Corp. v. Buelow*, 670 So. 2d 12, 16 (Miss. 1995). Mississippi courts have applied heightened scrutiny only in two circumstances. First, heightened scrutiny is applied when a party's entire proposal is adopted verbatim. *Delta Reg'l Med. Ctr. v. Venton,* 964 So. 2d 500, 504 (Miss. 2007); *Miss. Dept. of Transp. v. Johnson,* 873 So. 2d 108, 111 (Miss. 2004). Heightened scrutiny also is applied when the court makes only minor alterations to a party's proposed findings. *Smith v. Orman*, 822 So. 2d 975, 977-78 (Miss. Ct. App. 2002).

¶12. In this case, the court made substantial alterations to the proposed findings submitted by the plaintiff. These alterations indicate the trial court gave the case careful review and formed its own opinion. This Court has specifically stated that trial judges are allowed to adopt portions of proposed findings submitted by parties so long as the findings are not adopted verbatim. *City of Greenville v. Jones*, 925 So. 2d 106, 116 (Miss. 2006). Because the trial judge did not adopt the proposed findings verbatim, the manifest error/substantial evidence standard of review will apply. *Miss. State Tax Comm'n v. Med. Devices*, 624 So. 2d 987, 989 (Miss. 1993).

¶13. The standard of review for the admission or exclusion of evidence is abuse of discretion. *Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc*., 716 So. 2d 200, 210 (Miss. 1998). A trial judge's decision as to whether a witness is qualified to testify as an expert is given the widest possible discretion. *Smith v. State*, 925 So. 2d 825, 834 (Miss. 2006).

¶14. The issues before this Court may be summarized as follows: (1) Whether the trial court erred in admitting the testimony of Plaintiff's expert, Dr. Pande; (2) whether the trial

5

court erred in relying solely on the expert opinion of Dr. Pande; (3) whether a finding of fact made by the trial court was based on substantial evidence; (4) whether the trial court's order is supported by substantial evidence; (5) whether the order of the trial court should be reversed because the plaintiff failed to establish an applicable standard of care; (6) whether the final judgment of the trial court should be reversed because it awarded prejudgment interest.

## II.

*Did the trial court err in admitting the testimony of Plaintiff's expert, Dr. Pande?*

¶15.    Mississippi law requires the trial court to ensure that proposed testimony satisfies Rule 702 of the Mississippi Rules of Evidence. *Donaldson v. Covington County*, 846 So. 2d 219, 226 (Miss. 2003). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Miss R. Evid. 702.

¶16.    The only evidence offered by UMC to attack the basis of Dr. Pande's opinion is the statement by its own expert, Dr. Pinkston, that medical journals have stated that aspiration of sterile water does not cause pneumonia. The trial judge, not finding this testimony persuasive, admitted Dr. Pande's testimony. A trial judge's decision as to whether a witness is qualified to testify as an expert is given the widest possible discretion. *Smith v. State*, 925 So. 2d 825, 834 (Miss. 2006).

6

¶17. UMC also argues that, because Dr. Pande is not a pulmonologist, he should not be allowed to opine on matters concerning aspiration pneumonia. However, a witness need not be a specialist in any particular profession to testify as an expert. *Hubbard v. Wansley*, 954 So. 2d 951, 957 (Miss. 2007). The scope of the witness's knowledge and experience, and not any artificial classification, governs the question of admissibility. *West v. Sanders Clinic for Women, P.A.*, 661 So. 2d 714, 719 (Miss. 1995).

¶18. Dr. Pande testified he had the necessary knowledge to opine as to the diagnosis and causes of pneumonia. He further testified that, although he was not a pulmonologist, he was qualified as a neurologist, and that he had treated patients similar to Pounders.

¶19. Dr. Pande also testified that, as a neurologist, he was qualified to provide the opinions included in his testimony. Given the specialized training and knowledge Dr. Pande acquired through his medical-school instruction and past experience with patients similar to Pounders, we cannot say that the trial court was manifestly wrong in allowing Dr. Pande to opine as to the diagnosis and causes of Pounders's pneumonia. Thus, this assignment of error is without merit.

### III.

*Did the trial court err in relying solely on the expert opinion of Dr. Pande?*

¶20. The trial court has the sole authority in determining credibility of witnesses when sitting as a trier of fact in a bench trial. *Pride Oil Co. v. Tommy Brooks Oil Co.*, 761 So. 2d 187, 193 (Miss. 2000). Therefore, the judge had the prerogative to place whatever weight he chose on Dr. Pande's testimony.

7

¶21.    Dr. Pande testified that he reviewed the entire record in preparation for his testimony. He stated that if a patient has difficulty swallowing, and water enters her mouth, it becomes contaminated with bacteria.  He testified that if the contaminated water then entered the lungs, it could cause pneumonia.  Dr. Pande opined that if Pounders aspirated the fluid from her oxygen tube, it caused her pneumonia.  In addition, he testified that the problems Pounders experienced after the water-bottle incident were a result of her developing pneumonia.

¶22.    Dr. Pande's opinions were based upon facts in Pounders's medical records. Dr. Pande gave reasonable opinions based upon these facts.  Because the trial judge is the sole judge of the credibility of witnesses and may place whatever weight he feels appropriate on testimony, the trial court did not abuse its discretion by relying on Dr. Pande's testimony. Thus, this assignment of error is without merit.

**IV.**

*Was a finding of fact made by the trial court based on substantial evidence?*

¶23.    UMC asserts that the trial court's finding that Pounders was doing well and was about to be released from the hospital before the water-bottle incident is not supported by the medical records and thus not based on substantial evidence.  A trial judge's findings of fact are afforded deferential treatment.  *City of Greenville v. Jones*, 925 So. 2d 106, 109 (Miss. 2006).  The trial judge's findings of fact are not to be disturbed unless manifestly wrong or clearly erroneous.  *Morley v. Jackson Redevelopment Auth.*, 874 So. 2d 973, 975 (Miss. 2004).

8

¶24. In this case, the physician's notes stated that Pounders was doing well. Pounders's husband testified that he was present when rehabilitation staff visited Pounders to prepare for her transfer to a rehabilitation facility within a few days. Pounders's son testified that he observed therapists engaged in planning Pounders's move to rehabilitation. The records include a nurse's note to call the rehabilitation center to inform them that discharge consultations would need to be postponed due to the deterioration in Pounders's condition.

¶25. These facts amply support the trial court's conclusion that Pounders was doing well and was about to be discharged before the water-bottle incident. Thus, the trial judge's finding on this issue was not clearly erroneous.

## V.

*Was the trial court's order supported by substantial evidence?*

¶26. A court's ruling is not based on substantial evidence if glaringly obvious evidence is ignored. ***Gonzalo v. Oakes***, 740 So. 2d 312, 315 (Miss. 1999). UMC claims that the testimony of its expert, Dr. Pinkston, was ignored. However, because a judge may place whatever weight he or she chooses on expert testimony, the failure to acknowledge or rely upon the testimony of a particular expert is not error. ***Univ. of Miss. Med. Ctr., v. Johnson***, 2007 Miss. App. LEXIS 345, *7 (Miss. Ct. App. May 22, 2007).

¶27. UMC points out that the court failed to consider evidence that Pounders was aspirating her own saliva prior to the water-bottle incident. However, Dr. Pande testified that the water-bottle incident, and not the aspiration of saliva, caused Pounders's pneumonia. In addition, Dr. Pinkston testified that Pounders was aspirating her own saliva, but did not take into account the fact that Pounders's swallowing was irregular because the nerves causing

9

that motion were paralyzed during her surgery. Because there was conflicting testimony and evidence regarding the cause of Pounders's pneumonia, the trial judge's findings of fact will not be overruled, because they were not clearly erroneous. *Miss. State Tax Comm'n v. Med. Devices*, 624 So. 2d 987, 989 (Miss. 1993).

## VI.

*Should the order of the trial court be reversed because Plaintiff failed to establish an applicable standard of care?*

¶28.    UMC argues that, because the standard of care for an escort handling oxygen was never established, Pounders failed to establish a prima facie case of negligence. The standard of care is to be determined by the finder of fact. *Donaldson v. Covington County*, 846 So. 2d 219, 226 (Miss. 2003). A trial judge's findings of fact should not be reversed unless clearly erroneous. *Puckett v. Stuckey*, 633 So. 2d 978, 982 (Miss. 1993).

¶29.    In most lawsuits against hospitals, the issue of negligence involves the determination of an applicable professional standard of care. In this case, however, the person alleged to have committed a negligent act was neither a doctor nor a nurse. The escort's conduct must be evaluated using traditional negligence/reasonable-care standards. Furthermore, a hospital owes its patients a duty to exercise reasonable care. *McMillan v. King*, 557 So. 2d 519, 522 n. 1 (Miss. 1990). When a doctor notifies a hospital that a patient is at high risk for a particular type of complication, the hospital must take reasonable precautions to reduce or eliminate the risk, if possible. *Clark v. St. Dominic-Jackson Memorial Hosp*., 660 So. 2d 970, 972-73 (Miss. 1995).

¶30.    The trial judge easily could have concluded that UMC was aware of Pounders's risk for aspiration.  Pounders's doctor noted in the medical records that Pounders should not receive anything by mouth.  In addition, testimony of the escort established that he received no medical training and that he was not aware of Pounders's condition.  Also, it is undisputed that actions of the escort caused Pounders to receive water orally, which was a direct violation of her doctor's orders.  The trial judge was fully justified in finding that UMC knew of Pounders's condition and did not take steps to insure that those caring for her were aware of her condition and were properly trained to address her needs.  Thus, we cannot say that the trial judge abused his discretion in finding that UMC failed to use reasonable care.  *See McMillan v. King*, 557 So. 2d 519, 522 (Miss. 1990); *Clark v. St. Dominic-Jackson Memorial Hosp.*, 660 So. 2d 970, 972-73 (Miss. 1995).

## VII.

*Should the final judgment of the trial court be reversed because it awarded prejudgment interest?*

¶31.    UMC asserts that the trial judge erroneously awarded pre-judgment interest, contrary to Mississippi Code Annotated Section 11-46-15(2) (Rev. 2002).  Pounders agrees that an award of prejudgment interest was improper.  Accordingly, the award of prejudgment interest is reversed and rendered.

## CONCLUSION

¶32.    Having considered the arguments set forth by the parties in their briefs to this Court, and having reviewed the record, we affirm the verdict of the Hinds County Circuit Court in

11

favor of Pounders in the amount of $150,000, and we reverse and render the award of prejudgment interest.

¶33.    **AFFIRMED IN PART; REVERSED AND RENDERED IN PART**.

**WALLER AND DIAZ, P.JJ., CARLSON, GRAVES AND LAMAR, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.  SMITH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION  JOINED BY RANDOLPH, J.**

**SMITH, CHIEF JUSTICE, DISSENTING:**

¶34.    The majority affirms the award of damages of $150,000 against the University of Mississippi Medical Center (UMC),  holding that the trial court did not err in admitting the testimony of Melba Pounders's expert, Dr. Pande.  In my view, Dr. Pande never should have been allowed to testify as an expert in pulmonary medicine.  Pounders fails in her burden of proof without such expert testimony, as her case rests solely on Dr. Pande's testimony. Accordingly, I  dissent.

¶35.    The trial judge is granted the widest possible discretion, and the decision of the trial judge will stand unless this Court concludes "that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion." *Miss. Trans. Comm'n v. McLemore*, 863 So. 2d 31, 34 (Miss. 2003) (*citing* ***Puckett v. State***, 737 So. 2d 322, 342 (Miss. 1999)).  Here, Dr. Pande could not properly be qualified as a pulmonary- medicine expert under M.R.E. 702 due to his lack of "knowledge, skill, training, experience, or education" in this highly specialized area.  This area of medicine was clearly outside the scope of Dr. Pande's expertise. Dr. Pande himself stated that he was not a pulmonary specialist,  had never served as a primary treating physician for a patient with pulmonary problems, that his practice had

never involved treating patients with lung problems, and that he had never researched pulmonary medicine. Dr. Pande had no knowledge concerning aspiration pneumonia or the risks associated with this area of expertise under M.R.E. 702. "Only if the witness possesses scientific, technical, or specialized knowledge *on a particular topic* will he qualify as an expert on that topic. . . ." **Sheffield v. Goodwin** 740 So. 2d 854, 857 (Miss. 1999) (*quoting* **Thompson v. Carter**, 518 So. 2d 609, 615 (Miss 1987) (emphasis added). This Court also has held that a proffered expert must be familiar with the facilities, resources, services and options available at the location in question. **Palmer v. Biloxi Reg. Med. Ctr.** 564 So. 2d 1346, 1358. Dr. Pande fails to qualify as an expert under this requirement also.

¶36. It is clear that Dr. Pande was not qualified to give an opinion as a pulmonary-medicine specialist. **West v. Sanders Clinic for Women**, 661 So. 2d 714, 719 (Miss. 1995). *See also,* **Cheeks v. Bio-Medical Applications, Inc.**, 908 So. 2d 117, 121 (Miss. 2005). Dr. Pande's testimony was that the water incident was the precipitating event that caused Pounders's aspiration pneumonia. He further opined that in addition to the "water incident," giving high doses of steroids and other factors caused Pounders's hyperosmolar non-ketotic diabetic coma. Dr. Pande's opinion was based upon his view that sterile water becomes unsterile when it comes into contact with oropharyngeal bacteria in the mouth, and this caused Pounders's aspiration pneumonia. Incredible as it may be, Dr. Pande gave no basis for his opinion as required under **Daubert**. Dr. Pande's testimony is lacking as to sufficient facts or data, is not the product of reliable scientific principles and methods, and he clearly failed to apply said principles and methods reliably to the facts of this case. M.R.E. 702. Dr. Pande exhibited a significant lack of knowledge of numerous critical facts regarding

13

Pounders's condition: (1) Pande was unaware of the length of time after exposure of the lungs to bacteriological or foreign substance before the lungs show an infiltrate which can be infection or pneumonia (nor had he researched this issue); (2) Pande had no knowledge of the type of pneumonia Pounders had, or whether it was sensitive to the antibiotic used in her treatment; (3) Pande made no diagnosis based on any test of any particular organism that infected the lungs; (4) Pande was unaware of whether or not the water which entered Pounders's mouth during the "water incident" was contaminated; (5) Pande had no idea what amount of water a patient would have to aspirate into the lungs to cause aspiration pneumonia; (6) Pande had no knowledge of the volume of other contaminated fluids in Pounders's mouth which ultimately entered her body; (7) Pande did not know that intubated and respirator patients routinely have their lungs flushed with sterile water or saline and that much remains in the lungs and cannot be removed; (8) Pande did not know Pounders's sputum cultures were negative for aspiration pneumonia; (9) Pande failed to review Pounders's medical records sufficiently to know which procedures and/or drugs were used to treat her in her recovery from surgery and which were used to treat her developing complications. Dr. Pande's testimony is merely unsupported, rank speculation and/or conjecture, subjective belief and conclusions without any basis provided by reliable scientific methods and procedures; thus his opinion was inadmissible. *McLemore,* 863 So. 2d at 37 (Miss. 2003). Mere conclusions "devoid of factual bases" do not meet the expert-opinion criteria. *Palmer v. Biloxi Reg. Med. Ctr.* 564 So. 2d 1346, 1358. Further, this Court has held that to be admissible, a party must show that "the testimony is the product of reliable principles and methods." Dr. Pande's testimony fails to meet this criterion.

14

¶37. By contrast, the hospital's experts Dr. Badr, Dr. Bowles, and Dr. Pinkston were critical-care specialists experienced in treating patients with pulmonary problems. Dr. Badr also was co-director of the surgical ICU unit and sole director of neurosurgical ICU and was very familiar with aspiration pneumonia, routinely dealing with aspiration-pneumonia patients. Dr. Pinkston was a pulmonologist with extensive experience treating patients with pneumonia as well as other pulmonary diseases. Dr. Bowles, who removed Pounders's tumor, regularly and routinely treated patients with pulmonary problems, including those with aspiration pneumonia. The trial court apparently discounted the testimony of these three esteemed experts in pulmonary problems and accepted Dr. Pande's testimony, although Pande clearly should not have been qualified under Mississippi Rules of Evidence 702 and our case law as an expert in this field.

¶38. The trial court ignored the hospital records and the testimony of UMC's experts, especially Dr. Pinkston, who testified Pounders was already aspirating her own body fluids and other fluids prior to the "water incident," and thus, that incident could not have caused the aspiration pneumonia, if she did in fact have aspiration pneumonia. The record clearly reflects that Pounders, as early as April 14, had symptoms of infection, fever and lung congestion, had rhonchia in the lungs (abnormal sounds indicating secretions in the lungs), yellow secretions, and rales (another abnormal sound in the lungs, which can indicate pneumonia). Even more critical was Dr. Badr's testimony that intubated and respirator patients in ICU routinely have their lungs flushed with sterile water and are suctioned with either plain water or saline. (This procedure requires 100 ccs of water to flush the lungs, yet only 20-30 ccs can be suctioned from the lungs. The large amount remaining does not cause

15

aspiration pneumonia. Rather, it would take 300-400 ccs of water to cause an infection in the lungs.) The testimony of both Dr. Badr and Pinkston was unrebutted. It is obvious that the trial court disregarded substantial evidence from the hospital records and the three UMC experts. A trial court's decision is not based on substantial evidence if the court has disregarded "glaringly obvious evidence" which is in conflict with its ruling. *DeGeorge v. Oakes*, 740 So. 2d 312, 315 (Miss. 1999).

¶39. In my view, the trial judge's decision was arbitrary and clearly erroneous, thus the lower court abused its discretion. I respectfully dissent.

**RANDOLPH, J., JOINS THIS OPINION.**