# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-IA-00190-SCT

*MID-SOUTH RETINA, LLC*

*v.*

*BERNICE CONNER*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/11/2010 |
| TRIAL JUDGE: | HON. THOMAS W. ALLEN |
| COURT FROM WHICH APPEALED: | COUNTY COURT OF COAHOMA COUNTY |
| ATTORNEYS FOR APPELLANT: | SHELBY KIRK MILAM |
| | JOSIAH DENNIS COLEMAN |
| ATTORNEYS FOR APPELLEE: | DANIEL M. CZAMANSKE, JR. |
| | JOSEPH HARLAND WEBSTER |
| NATURE OF THE CASE: | CIVIL - MEDICAL NEGLIGENCE |
| DISPOSITION: | REVERSED AND RENDERED - 09/08/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC**.

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Bernice Conner filed a medical-negligence suit against Mid-South Retina, LLC. The County Court of Coahoma County originally granted summary judgment in favor of Mid-South, finding that Conner had failed to establish the necessary element of causation. The trial court then reversed its judgment upon reconsideration and denied Mid-South's motion for summary judgment. Aggrieved, Mid-South filed a petition for interlocutory appeal, and we granted the petition. For the reasons discussed below, we reverse the trial court's

judgment denying Mid-South's motion for summary judgment and render judgment here in favor of Mid-South.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. In 2003, Mid-South Retina, LLC, and Dr. Brad Priester treated Bernice Conner for age-related macular degeneration. As part of Conner's treatment, she intravenously received Visudyne, a drug that aids in cold-laser therapy for macular degeneration. During Conner's second visit to Mid-South, Visudyne infiltrated the soft tissue around the injection site in the bend of Conner's elbow. Dr. Priester determined that enough Visudyne had entered Conner's bloodstream and proceeded with the cold-laser therapy. The therapy session continued without incident.

¶3. Visudyne is a photodynamic drug, and tissue containing the drug can easily burn if exposed to sunlight. Dr. Priester testified that, because of this side effect, he ensured that Conner's elbow was sufficiently bandaged and covered prior to her leaving Mid-South. Shortly after leaving, Conner called Mid-South complaining that her arm was hurting. She was instructed to return to Mid-South. Upon her return, Dr. Priester sent Conner to a dermatologist. The dermatologist instructed Conner to go immediately to an emergency room. Conner did not go to the emergency room, but instead returned to her home.

¶4. The next day, Dr. Priester contacted Conner, and she informed him that she was still in pain. Dr. Priester instructed her to go to an emergency room. Conner went to an emergency room and was referred to a general surgeon, who prescribed pain medication and antibiotics. Conner saw the surgeon two more times in 2003, and the surgeon noted that the injury on Conner's elbow measured less than one centimeter in size.

2

¶5.    Conner filed suit against Mid-South and Dr. Priester in 2004, alleging medical negligence in the administration of Visudyne. The defendants filed a motion for summary judgment, arguing that Conner had failed to designate an expert witness. Conner then designated LaDonna Northington, a registered nurse, as her only expert witness. Northington stated in her affidavit that the Mid-South nurses were negligent in failing to document fully Conner's treatment and the Visudyne infiltration. The defendants filed a rebuttal to Conner's designation, claiming that Conner had not established the necessary element of causation. At the summary judgment hearing, Conner conceded that summary judgment was appropriate as to Dr. Priester. On August 10, 2009, the trial court granted summary judgment on behalf of Dr. Priester and Mid-South, finding that Conner had not sufficiently established all the elements of her medical-negligence claim.

¶6.    On August 20, 2009, Conner filed a motion for reconsideration, attaching a supplemental affidavit from Northington. Mid-South moved to strike the affidavit, arguing that Conner should not be able to correct the deficiencies in her previous affidavit through a post-judgment motion for reconsideration. The trial court found that Conner had, at that time, established all the necessary elements of her medical-negligence claim. Thus, the trial court denied Mid-South's motion to strike the supplemental affidavit submitted by Northington, reversed its previous grant of summary judgment in favor of Mid-South, and denied Mid-South's motion for summary judgment. Mid-South then petitioned this Court for an interlocutory appeal, and we granted Mid-South's petition.

**DISCUSSION**

3

¶7. Mid-South raises three issues on interlocutory appeal: (1) whether Northington is qualified to render an expert opinion on medical causation; (2) whether the trial court erred in denying Mid-South's motion for summary judgment; and (3) whether the trial court erred in considering Northington's supplemental affidavit. Because the first two issues are dispositive, we decline to address the final issue on appeal. *See Berry v. Patten*, 51 So. 3d 934, 937 (Miss. 2010). We combine our discussion of the first two issues for the purposes of today's appeal.

**WHETHER MID-SOUTH IS ENTITLED TO SUMMARY JUDGMENT BECAUSE CONNER HAS FAILED TO ESTABLISH ALL OF THE NECESSARY ELEMENTS OF HER MEDICAL-NEGLIGENCE CLAIM.**

¶8. In order to establish a prima facie case of medical negligence, the plaintiff must prove the following elements:

(1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury, and; (4) the plaintiff was injured as a result.

*McDonald v. Mem'l Hosp. at Gulfport*, 8 So. 3d 175, 180 (Miss. 2009) (quoting *Delta Reg'l Med. Ctr. v. Venton*, 964 So. 2d 500, 504 (Miss. 2007)) (other citations omitted). In medical-negligence cases, expert testimony is generally required to survive summary judgment. *McDonald*, 8 So. 3d at 180. Summary judgment is appropriate when the nonmoving party has failed sufficiently to establish an essential element of that party's claim. *Buckel v. Chaney*, 47 So. 3d 148, 153 (Miss. 2010) (citations omitted).

¶9.     Citing our recent opinion in *Vaughn v. Mississippi Baptist Medical Center*, 20 So. 3d 645 (Miss. 2009), Mid-South contends that Northington cannot offer an opinion on medical causation, and thus, Conner has failed to establish the necessary element of causation.  In *Vaughn*, we "explicitly [held] that nurses cannot testify as to medical causation." *Id.* at 652.

¶10.    In *Vaughn*, the plaintiff's only expert-causation witness was a registered nurse. *Id.* at 651.  The trial court granted the defendant's motion for summary judgment, finding that Vaughn had failed to show how her injury was the proximate result of the defendant's acts or omissions. *Id.* at 650.  The trial court also struck Vaughn's expert designation of a registered nurse, "finding that nurses could not properly offer expert testimony as to medical causation." *Id.*  Although we found that the trial court erred in striking all of the nurse's testimony, we ultimately found that summary judgment was proper.[1] *Id.* at 655.  Citing *Richardson v. Methodist Hospital of Hattiesburg, Inc.*, 807 So. 2d 1244, 1247-48 (Miss. 2002), and numerous holdings from other jurisdictions, we held that "nurses cannot testify

---

[1] In finding that the trial court had erred in striking all of the nurse's testimony, we stated:

> Inasmuch as we have held that Keller could not testify as to medical causation, the trial court did not abuse its discretion in not allowing testimony from Keller that the negligent acts of Baptist nurses proximately caused Vaughn's staph infection.  While the trial court did err in barring Keller's testimony outright and striking the portion of the affidavit regarding the elements of standard of care and deviations from the nursing standard of care, this assignment of error is moot, given that we have held summary judgment in this case was properly granted.

*Id.* at 655.

as to medical causation." *Vaughn*, 20 So. 3d at 652. Accordingly, we held that the trial court in *Vaughn* did not err in granting summary judgment in favor of the defendant because the plaintiff had failed to establish the necessary element of causation. *Id.* at 653.

¶11. In today's case, Conner argues that the issue of whether Northington may render an expert opinion on causation was not before the trial court and therefore is not properly before this Court on interlocutory appeal. Mid-South moved for summary judgment on October 22, 2008, arguing that it was entitled to summary judgment because Conner had failed to designate an expert witness. In response to Mid-South's motion, Conner designated Northington, a registered nurse, as her expert witness. In November 2008, Conner submitted Northington's affidavit and filed a response to Mid-South's motion for summary judgment, stating that she had now designated an expert witness and that Northington was "competent and qualified" to offer testimony. Mid-South filed a rebuttal memorandum in support of its motion for summary judgment in December 2008. The trial court granted Mid-South's motion for summary judgment, finding that Northington was not familiar with Visudyne administration and that Conner had not established the necessary element of causation. The trial court entered its original order, granting Mid-South's motion for summary judgment, in August 2009. Conner filed her motion for reconsideration, and Mid-South responded in August 2009 as well. The trial judge entered his order denying Mid-South's motion for summary judgment upon reconsideration in January 2010. We handed down our opinion in *Vaughn* in October 2009 – two months after the parties had filed their last pretrial motions and responses, but three months before the trial court had ruled on the motions. *Vaughn*, 20 So. 3d at 645.

6

¶12. The parties in today's case were without the benefit of *Vaughn* during the pretrial phase mentioned above, and we recognize that our holding in *Vaughn* was not brought before the learned trial judge as part of the parties' pretrial arguments. The rule in *Vaughn* is clear: Nurses cannot render expert opinions on medical causation. *Id.* at 652. Thus the relevant inquiry before us is whether this explicit rule applies to today's appeal.

¶13. Generally, "all judicial decisions apply retroactively unless the Court has specifically stated the ruling is prospective." *Cleveland v. Mann*, 942 So. 2d 108, 113 (Miss. 2006) (citing *Miss. Transp. Comm'n v. Ronald Adams Contractor, Inc.*, 753 So. 2d 1077, 1093 (Miss. 2000); *Morgan v. State*, 703 So. 2d 832, 839 (Miss. 1997)). Further, "newly enunciated rules of law are applied retroactively to cases that are pending trial *or that are on appeal*, and not final at the time of the enunciation." *Thompson v. City of Vicksburg*, 813 So. 2d 717, 721 (Miss. 2002) (emphasis added).

¶14. Understandably, Conner contends that Mid-South may not argue on appeal an issue that it did not raise before the trial court.[2] Our precedent discussing retroactivity of newly announced rules of law, however, runs contrary to Conner's assertion. In *Ronald Adams Contractor, Inc.*, we quoted the United States Supreme Court's discussion of three possible ways an issue of retroactivity may be resolved:

---

[2] Although Mid-South did not explicitly argue before the trial court that nurses in general may not testify as to medical causation, the issue of Northington's qualifications was brought before the trial court. In its rebuttal memorandum, Mid-South argued that Northington was not qualified to give an expert opinion on Visudyne administration. The trial court also did not address the issue of whether nurses in general may testify as to medical causation, but did find ultimately that Northington was qualified to render an expert opinion in today's case.

First, a decision may be made fully retroactive, applying both to the parties before the court and to all others by and against whom claims may be pressed, consistent with res judicata and procedural barriers such as statutes of limitations. This practice is overwhelmingly the norm, and is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law. It also reflects the declaratory theory of law, according to which the courts are understood only to find the law, not to make it . . . . Second, there is the purposely prospective method of overruling, under which a new rule is applied neither to the parties in the law-making decision nor to those others against or by whom it might be applied to conduct or events occurring before that decision. The case is decided under the old law but becomes a vehicle for announcing the new, effective law with respect to all conduct occurring after the date of that decision . . . . This approach claims justification in its appreciation that . . . to apply the new rule to parties who relied on the old one would offend basic notions of justice and fairness. But this equitable method has its own drawback: it tends to relax the force of precedent, by minimizing the costs of overruling, and thereby allows the courts to act with a freedom comparable to that of legislatures. Finally, a court may apply a new rule in the case in which it is pronounced, then return to the old one with respect to all others arising on facts predating the pronouncement. This method . . . breaches the principle that litigants in similar situations should be treated the same, a fundamental component of stare decisis and the rule of law generally.

*Ronald Adams Contractor, Inc*.,753 So. 2d at 1092-93 (quoting *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 535-37, 111 S. Ct. 2439, 2443-44, 115 L. Ed. 2d 481 (1991), *superseded by statute on other grounds* (citations omitted)).

¶15.    Historically, we have applied the first approach described and have applied the law as it existed at the time of appellate review. Our decisions "are presumed to have retroactive effect unless otherwise specified." *Ronald Adams Contractor, Inc.*, 753 So. 2d at 1093 (citing *Morgan*, 703 So. 2d at 839). In *Vaughn*, we did not state that our ruling was prospective. Thus it is presumably retroactive. *See Ronald Adams Contractor, Inc.*, 753 So. 2d at 1093 (citing *Morgan*, 703 So. 2d at 839). Accordingly, we apply our holding in *Vaughn* with the full force of the precedent that it is.

8

¶16. Northington, Bernice Conner's only designated expert, may not render an expert opinion on medical causation. *See Vaughn*, 20 So. 3d at 652. Without expert testimony on medical causation, Conner has failed to establish all of the necessary elements of her medical-negligence claim. *See McDonald*, 8 So. 3d at 180. Because Conner has failed to establish a necessary element of her claim, Mid-South is entitled to summary judgment. Accordingly, we reverse the trial court's judgment denying Mid-South's motion for summary judgment upon reconsideration and render judgment here in favor of Mid-South Retina, LLC.

¶17. **REVERSED AND RENDERED.**

**WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶18. Because I do not agree that nurses invariably should be excluded from testifying in Mississippi courts as expert witnesses on issues of medical causation, I respectfully dissent.

¶19. During the course of Conner's suit against Mid-South for medical negligence associated with the intravenous (IV) dose of Visudyne administered to her on April 10, 2003, Conner designated LaDonna Northington, R.N., as her expert witness. In her affidavit, Nurse Northington attested that she was familiar with the appropriate standard of nursing care with regard to IV placement, and with complications such as infiltrations. She also attested that, based on her education and experience as a nurse and nursing professor, a review of Mid-South's medical records, and the depositions of Dr. Priester (Conner's treating physician at Mid-South), Bernice Conner, and Nurse Marilyn Hampton (the nurse who administered the

Visudyne IV), she was of the opinion that Mid-South was negligent in the care provided to Bernice Conner on or about April 10, 2003, and that such negligence was a violation of the applicable standard of care with regard to the IV administration of Visudyne and the requisite followup care. Nurse Northington specifically noted that Mid-South's failure to document the manner and method in which the IV was placed and monitored was below the applicable standard of care and that there was no evidence the infiltration site had been bandaged to prevent incidental exposure to sunlight. Finally, she opined to a reasonable degree of medical probability that the enumerated negligent acts had caused or contributed to the injury and scarring suffered by Conner.

¶20. Following the trial court's granting of Mid-South's motion for summary judgment, based on Conner's failure to establish a *prima facie* case of medical malpractice, Conner filed a motion to reconsider with an attached supplemental affidavit from Nurse Northington. In her supplemental affidavit, Nurse Northington opined that, based on her experience as a nurse and nursing professor, there was nothing unique or different about administering Visudyne as opposed to other IV drugs, with the exception of the need to instruct the patient to stay out of the sun. She further stated that "the risks of infiltration from the intravenous administration of this drug . . . would be no different than the risk of infiltration from other intravenous drugs, except that the results of infiltration are more caustic and the need to stay out of sunlight [would be greater] if such an infiltration did occur." Based on the medical records and the depositions of both the nurse who administered the Visudyne to Conner and Conner's treating physician, Nurse Northington further opined that the IV administration of Visudyne was not properly monitored and that, once the infiltration had occurred, Conner's

10

treatment providers were negligent in having failed to cover the area and protect it from accidental exposure to sunlight. These negligent acts, according to Nurse Northington, proximately caused or contributed to Conner's injury.

¶21.    The trial court granted Conner's motion to reconsider and denied Mid-South's motion for summary judgment. Mid-South appealed, and, for the first time on appeal, argued that Nurse Northington was not qualified to serve as an expert based on this Court's decision in ***Vaughn v. Miss. Baptist Med. Ctr.***, 20 So. 3d 645 (Miss. 2009). The majority acknowledges that this argument was first presented on appeal, but reasons that the rule applied retroactively to exclude Nurse Northington's expert opinion. Maj. Op. at ¶15.

¶22.    ***Vaughn*** held that nurses are explicitly prohibited from testifying as to medical causation. ***Id.*** at 652. In ***Vaughn***, I dissented, reasoning that:

> [T]he issue of whether a particular nurse, by virtue of his or her knowledge, skill, experience, training or education, possesses such ability is better determined by a case-by-case inquiry than by a broad, "one-size-fits-all" judicial pontification to the effect that no nurse in the world will ever be allowed to testify as to medical causation in any Mississippi court case. As is true of any other profession, the education, experience and understanding of nurses span a broad spectrum. We should not enunciate a hard and fast rule that permanently forecloses the possibility of any nurse's being qualified to give expert testimony on medical causation in any and all cases that may arise in the future.

***Id.*** at 656-57 (Kitchens, J., dissenting). I echo that same reasoning in the case *sub judice* inasmuch as "it is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of admissibility." ***Brown v. Mladineo***, 504 So. 2d 1201, 1202 (Miss. 1987) (quoting ***Fitzmaurice v. Flynn***, 356 A.2d 887, 892 (Conn. 1975)). Other jurisdictions in both criminal and civil cases have agreed with the premise that

11

nurses with the "proper training, expertise, and experience are qualified to give expert opinions on medical causation in appropriate circumstances." ***Velazquez v. Commonwealth of Va.***, 557 S.E.2d 213, 218 (Va. 2002).[3]

¶23.    I find no basis in the language of Mississippi Rule of Evidence 702 "for any preference of licensed physicians for such medical testimony." ***State v. White***, 457 S.E.2d 841, 858 (N.C. 1995) (holding that sexual assault nurse examiners are qualified to testify as to the cause of a physical injury despite not being licensed to diagnose illnesses or prescribe treatment).[4]  Mississippi Rule of Evidence 702 provides that:

---

[3]*See also **Mohajer v. Commonwealth of Va.***, 579 S.E.2d 359, 364 (Va. App. 2003) (finding that a sexual assault nurse examiner need not be licensed to practice medicine to offer an expert opinion on the causation of injuries resulting from an alleged sexual assault); ***Parris v. Uni Med, Inc***.,  861 S.W.2d 694, 699 (Mo. App. E.D. 1993) (finding no error in trial court allowing nurses to testify as experts on the cause and treatment of bed sores); ***Mellies v. Nat'l Heritage, Inc.,*** 636 P.2d 215, 224 (Kan. App.1981) (holding that when a proper foundation is laid as to the nurse's experience with bed sores, that nurse can "qualify as an expert as to causation and as to such parts of treatment and cure that are performed by such nurse.").

[4]Our own Court of Appeals, in a criminal case in which the defendant was convicted of gratification of lust, rejected the defendant's argument that expert testimony by a sexual assault nurse examiner was erroneously admitted because it was beyond the scope of her qualifications. *See **Murray v. State,*** 20 So. 3d 739, 741 (Miss. Ct. App. 2009), *cert. denied,* 27 So. 3d 404 (Miss. 2010). In doing so,  the court recognized that "nursing professionals routinely testify as to whether a victim's injuries are consistent with a sexual assault." ***Id.*** at 742 (citing ***Havard v. State***, 988 So. 2d 322, 332 (Miss. 2008) (nurse testified that injuries received by minor victim were the result of sexual trauma); ***Adams v. State***, 772 So. 2d 1010, 1017 (Miss. 2000) (nurse testified that the victim's hymen was torn and that this injury was consistent with penetration by a penis, finger, or other object)). The appellate court held that the expert witness was an experienced emergency room nurse, had conducted numerous sexual assault examinations, and had personally conducted the examination of the victim; thus "her testimony assisted the jury and was both relevant and reliable." ***Murray,*** 20 So. 3d at 742.

I cite ***Murray***, a case in which this Court unanimously voted to deny certiorari, to illustrate that I see no distinction in how Rule 702 should be applied in a civil versus a

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In the case *sub judice*, it is clear that Nurse Northington met the requirements of Rule 702. We should not prohibit our trial judges and jurors from hearing and considering professional opinions of this quality.

¶24.    Mississippi Rule of Civil Procedure 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order to withstand summary judgment, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." ***Whiting v. Univ. of S. Miss.***, 62 So. 3d 907, 914 (Miss. 2011) (quoting Miss. R. Civ. P. 56(e)).

¶25.    Nurse Northington's expert opinion was that Conner's injury was proximately caused by Mid-South's breach of the applicable standard of care owed to Conner in the IV administration of Visudyne. Because this expert should not be excluded on the necessary

---

criminal case. ***Vaughn*** has the effect of precluding nurses from testifying as to medical causation even in the context of a criminal sexual assault case. *See **Vaughn,*** 20 So. 3d at 652 ("We now explicitly hold that nurses cannot testify as to medical causation.").

element of causation, I am of the opinion that Conner did not fail to establish a *prima facie* case of medical negligence. In this case, sufficient evidence exists to create genuine issues of material fact as to whether Nurse Hampton, the nurse who had administered Visudyne to Conner at Mid-South, had breached the appropriate standard of nursing care and whether such breach proximately caused Conner's injury. Accordingly, summary judgment was not appropriate in this case. Thus, I would affirm the trial court's judgment denying Mid-South's motion for summary judgment.

**KING, J., JOINS THIS OPINION.**

14