CARLTON, J.,
concurring in part and dissenting in part:
¶ 33. I respectfully concur in part and dissent in part. I agree with the majority’s decision reversing the judgment of the trial court. However, I would render a judgment in favor of the Sumralls as to the issue of'liability and remand to the trial court to determine damages. I submit that the findings and judgment 'Of the trial judge in this bench trial were not supported by credible or substantial evidence in the record. I also submit that the trial court’s findings were contrary to established Mississippi law. As a result, the judgment is against the overwhelming weight of the evidence and contrary to the law.
¶34. In this case, the record reflects that the Sumralls met their burden of presenting a prima facie case of medical negligence against Singing River Hospital and its nursing staff.[3] The Sumralls -met this *671 burden specifically through the testimony of two medical experts establishing the. following evidence of .the required elements: (1) the standard of nursing care applicable in this case;. (2) the duty owed to Della in this case to conform to that required medical standard; (3) the breach of that duty by Singing River as the proximate cause of Della’s injuries and damages.[4] “Recovery in a negligence action requires proof by a preponderance of the evidence of the conventional tort elements: duty, breach of duty, proximate' causation, and injury (i.e., damages).” Palmer v. Biloxi Reg’l Med. Ctr. Inc., 564 So.2d 1346, 1354 (Miss.1990). Singing River, however, failed to present competent conflicting evidence and therefore failed to rebut the Sumralls’ prima facie case,
¶ 35¡ The laws of the state'of Mississippi have long recognized that “[a] hospital may be subject to liability for its own acts of negligence toward patients and others, but also, it may be liable where- the negligence of its health care personnel is imputed to the hospital under an agency theory.” Boyd v. Lynch, 493 So.2d 1315, 1319 (Miss.1986).[5] The determination of whether a duty is owed constitutes a question of law, and is reviewed de novo on appeal. See Scafide v. Bazzone, 962 So.2d 585, 592-93 (¶¶ 20-21) (Miss.Ct.App.2006).[6]
¶ 36. In applying a de novo standard of review to the findings and judgment of the trial court, I submit that the trial court erroneously found that no duty was owed by Nurse Steele, ánd hence by Singing River, to Della. Mississippi law has long recognized that nursing personnél of a hospital owe 'at the very least a duty to exercise due care to the patients.[7] See *672 Univ. of Miss. Med. Ctr. v. Pounders, 970 So.2d 141, 148 (¶ 29) (Miss.2007). Thus, Singing River failed to present competent-medical expert testimony -to rebut the Sumralls’' prima facie case.[8] The trial court therefore erred as a matter of law in its findings, and its resulting verdict is contrary to the evidence and law. “If a [hospital] chooses to allow a nurse to perform a non-delegable duty” of a physician to assure that medical treatment is properly ordered and administered, then “the [hospital] must accept responsibility if that duty is breached” by a nurse.[9] See and compare Sacks v. Necaise, 991 So.2d 615, 619 (¶ 9) (Miss.Ct.App.2007). The expert testimony presented by the hospital’s expert, Dr. Corder, and the trial judge’s related finding that the hospital owed no duty to Della caused “error within the trial mechanism itself [causing] a legally incorrect or unjust verdict to be rendered.” Compare Loyacono v. Travelers Ins. Co., 168 So.3d 981, 983 (¶ 8) (Miss.Ct.App.2013), and Bell v. City of Bay St. Louis, 467 So.2d 657, 659 (Miss.1985) (verdict reversed and rendered where jury was instructed contrary to Mississippi law).
¶ 37. The trial court also erred in its findings and verdict in relying on the medical opinion testimony of Nurse Steele for opinions falling outside of the scope of her nursing expertise. The record reflects no physician’s order authorizing nurses, or Nurse Steele, to remove central venous catheters, or to remove Della’s central catheter. The record does reflect, however, that upon' embarking on Della’s gallbladder surgery, her treating physician issued an order for a physician to insert the right internal jugular central venous line in Della, and anesthesiologist Dr. Paul Harris inserted her central venous catheter. The record further reflects that Nurse Steele decided on her own to remove Della’s central’ venous catheter without a doctor’s order and without even consulting a doctor, and she was allowed to render medical expert opinion testimony outside of her nursing expertise and competence.
138. Singing River argued at trial, and on appeal, that evidence showed that Nurse Steele assessed on- her own that Della’s central venous jugular catheter should be removed while Della sat upright, since Nurse Steele decided that Della could not tolerate a Trendelenburg position (where a patient with a jugular central line lies on her back with her upper torso inclined downward, so the central line insertion site is at or below, the heart). The testimony of the Sumralls’ medical expert, Dr. Vives, established that placing the central jugular catheter site at or below the heart increased venous pressure on the jugular vein to assist in preventing an air embolus. The Sumralls’ medical expert testimony also reflects that. Della could have tolerated this positioning, and thus the trial' court erred in relying on Nurse Steele’s testimony asserting that Della could not.[10] Nurse Steele lacked the medi *673 cal qualifications to engage in removing a central venous jugular catheter without a doctor’s order,- and she also lacked competency to render medical expert testimony and a medical opinion- as to causes of illnesses or how Della would or would not respond to the Trendelenburg position. Under Mississippi law, nurses are not qualified to medically diagnose or competent to render an opinion as to medical causation. Vaughn v. Miss. Baptist Med. Ctr., 20 So.3d 645, 652 (¶¶ 20-21) (Miss.2009) (nurses are not competent to testify on issues or causation or attest to causes of illnesses), see also Richardson v. Methodist Hosp. of Hattiesburg, Inc., 807 So.2d 1244, 1247-48 (¶¶ 14, 19) (Miss.2002) (finding medical diagnosis is outside a nurse’s scope of practice).[11] Since Nurse Steele was not medically qualified or competent to render expert medical opinion testimony as to whether Della could or could not medically tolerate the Trendelenburg position, her opinion testimony as to this issue is insufficient to support the verdict and judgment in this case.[12] Contrary to Nurse Steele’s unqualified assertions, the record reflects that the Sumralls’ medical expert, Dr. Vives, testified that Della could have tolerated the Trendelenburg position in her condition, and that such positioning would have helped Della’s breathing, and not hindered it. The Sumralls also presented evidence that after being discharged from Singing River to an assisted nursing center, Della tolerated the Trende-lenburg position for a central line removal without incident. The trial court’s findings and judgment were based upon incompetent evidence, and were contrary to Mississippi law. Furthermore, the record reflects that Singing River failed to. rebut the Sumralls’ prima facie casé of medical negligence with competent evidence.
¶ 39. Accordingly, I concur with • the majority’s decision to. reverse the trial court’s judgment. I would, however, render a judgment on the issue of liability in favor of the Sumralls, and remand the case back to the trial court to determine damages.

. See McIlwain v. Natchez Cmty. Hosp., Inc., 178 So.3d 678, 684 (¶ 15) (Miss.2015) (setting forth elements to show medical negligence of hospital and of its staff). The record reflects that the Sumralls’ expert Dr. Lidgia Vives, a vascular neurologist, testified that Nurse Steele breached the applicable standard of care by negligently removing Della’s central line jugular catheter and thereby caused the devastating and permanent damage alleged in this case. Dr. Vives testified that Nurse Steele violated the applicable standard of care as follows: by negligently removing the central line catheter from Della while she sat up in a chair,' instead of removing it in the recommended Trendelenburg position, a supine *671 position 'that places the catheter site below the heart to prevent an air embolism; .Nurse Steele failed to document the use of the Val-salva maneuver in the patient chart and that the Valsalva maneuver is required to prevent air embolisms; Nurse Steele's deposition testimony reflects that Nurse Steele left the site uncovered; and Nurse Steele removed the central line without a doctor's order to do so. The record also reflects expert testimony that Nurse Steele removed the central vein without supportive or intervention care such as a heart monitor, available 100% oxygen for suspected air embolism, and without monitoring ■Della’s respirations or EKG. The Sumralls' medical experts included Dr, Vives, Dr. James Martin, and Crystal Keller, R.N. Dr. Martin was the medical director of the nursing facility to which Della was admitted for care after her discharge from Singing River Hospital. Dr. Vives and Nurse Keller both testified as to the applicable standard of care, and their testimony was supported by medical literature. The expert testimony established that the standard of nursing care for removing a central line requires that a patient be placed in the Trendelenburg position,. or a supine position, so that the central line insertion site in the jugular is at or below her heart to reduce the risk of air embolus. The standard also requires .educating the patient about the procedure and getting the patient to perform the Valsalva maneuver, hold pressure, and apply occlusive gauze. Expert testimony reflects that central- venous catheters may be inserted at locations other than the jugular, like the chest or groin, which may not required not require a supine position to place the insertion site at or below the heart.

. See McIlwain, 178 So.3d at 684 (¶ 15).

. See Delta Reg’l Med. Ctr. v. Venton, 964 So.2d 500, 506 (¶¶ 16-20) (Miss.2007) (finding that negligent acts of nursing staff and other employees constituted the proximate contributing cause of the patient’s injuries and death); DeLaughter v. Lawrence Cnty. Hosp., 601 So.2d 818, 824-25 (Miss.1992); Miss. Baptist Health Sys., Inc. v. Kelly, 88 So.3d 769, 776-77 (¶¶ 22, 26) (Miss.Ct.App.2011).

. See also Belmont Homes, Inc. v. Stewart, 792 So.2d 229, 232 (¶ 11) (Miss.2001) (whether a duty is owed is a question of law that is reviewed de novo).

. Dr. Corder’s testimony conflicts with established law that reflects that at the very least, the hospital owes its patients a duty to exercise reasonable care. Univ. of Miss. Med. Ctr. v. Pounders, 970 So.2d 141, 148 (¶ 29) (Miss.2007). "When a doctor notifies a hospital *672 that a patient is at high risk for a particular type of complication, the hospital must take reasonable precautions to reduce or eliminate the risk, if possible.’.’ Id. (citing Clark v. St. Dominic-Jackson Memorial Hosp., 660 So.2d 970, 972-73 (Miss.1995)).

. See also M.R.E. 702 (evidentiary criteria for medical experts).

. See Code Miss. R. 15-16-1:41.30 (hospital policies must comply with professionally recognized nursing standards and delineate the functions for which the nursing- service is responsible; policies must address orders).

.As noted by the majority, Nurse Steele testified that Della had been reclining in a chair in her hospital room at an angle of less than ninety degrees, describing the position as "somewhere in between 30 [degrees] and 45 [degrees]. Probably closer to 45 [degrees].” - The trial judge's finding and judgment relied upon Nurse Steele’s testimony on *673 that issue, in finding that Nurse Steele determined Della’s need to sit "in a bedside chair in a position less than ninety degrees ... when she removed [Della's] central line."

. See M.R.E. 702 (expert testimony); Mid-S. Retina, LLC v. Conner, 72 So.3d 1048, 1051 (¶ 10) (Miss.2011).

. Vaughn, 20 So.3d at 651-52 (¶¶ 20-21) (finding nurses are not competent to testify on causes of illnesses).