# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01759-COA

**GRAHAM READ IRBY, A MINOR, BY AND THROUGH KAREN COLLINS, MOTHER AND NEXT FRIEND**                                                        APPELLANT

v.

**SUDHAKAR MADAKASIRA, M.D. AND PSYCAMORE, LLC**                                                        APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 08/24/2015 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN W. CHRISTOPHER |
| | WILLIAM P. FEATHERSTON JR. |
| ATTORNEYS FOR APPELLEES: | CLIFFORD B. AMMONS |
| | CLIFFORD BARNES AMMONS JR. |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 03/28/2017 |
| MOTION FOR REHEARING FILED: | 04/11/2017 - GRANTED; AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 05/29/2018 |
| MANDATE ISSUED: | |

**EN BANC.**

**BARNES, J., FOR THE COURT:**

## MODIFIED OPINION ON MOTION FOR REHEARING

¶1.     The motion for rehearing is granted. The previous opinion of this Court is withdrawn, and this opinion is substituted in its place.

¶2.     Graham Read Irby, by and through his mother, Karen Collins, filed a wrongful-death suit against the psychiatrist who treated his father, Stuart M. Irby (Irby), prior to Irby's death by suicide. The suit alleged the psychiatrist's intentional and negligent acts created an

irresistible impulse in Irby to commit suicide. The circuit court dismissed the action, finding that the claims of intentional acts were barred by the one-year statute of limitations for intentional torts and that Irby's suicide was a superseding event that barred any negligence claims. On appeal, Collins originally argued that despite allegations of intentional acts, the complaint was based in negligence, for which a two-year statute of limitations applied, and the negligence action was not barred.

¶3. Five days prior to this Court's original decision, the Mississippi Supreme Court decided *Pioneer Community Hospital of Newton v. Roberts*, 214 So. 3d 259 (Miss. 2017), in which it held that the minor's saving statute, Mississippi Code Annotated section 15-1-59 (Rev. 2012), applies to wrongful-death actions where a qualified person is available to file suit during the limitations period, but does not do so. On rehearing, Collins argues that under *Pioneer*, the minor's savings statute applied and prevented the dismissal of the complaint, as Graham is a minor, and no qualified person brought suit during the limitations period. We agree with Collins's argument on rehearing that the savings statute applies. Thus, we reverse and remand this matter to the trial court for further proceedings. However, the remand proceedings shall be limited to Collins's intentional-tort claim. We find, as we did in our original decision, that the trial court correctly dismissed Collins's negligence cause of action, as there is no basis for a negligence action for wrongful death by suicide. Thus, it is unnecessary for the trial court to revisit the negligence issue on remand. Therefore, we affirm in part and reverse and remand in part.

**FACTS**

2

¶4. Prior to his death, Irby sought psychiatric treatment from Dr. Sudhakar Madakasira, a physician specializing in psychiatry. Dr. Madakasira treated Irby for various conditions, including bipolar disorder, anger management, and alcohol abuse. On February 11, 2009, Irby and his wife, Karen Irby, now Karen Collins, were involved in a car accident. Irby suffered a severe, traumatic frontal-lobe brain injury. He continued to see Dr. Madakasira for the brain injury.

¶5. Due to that injury, Irby was deemed incapable of conducting his own business affairs, and coconservators were appointed by the Hinds County Chancery Court, First Judicial District. The conservators petitioned the chancery court for authority to file a divorce complaint on Irby's behalf against Collins. The petition was granted. In support of the divorce complaint, the conservators attached an affidavit executed by Dr. Madakasira on October 28, 2011, while Irby was under his care. The affidavit stated that Irby had told Dr. Madakasira that he was unsure if he wanted a divorce from Collins. However, Dr. Madakasira swore in his affidavit that due to the brain injury, Irby was not capable of making a decision in his or Graham's best interest regarding the divorce. Dr. Madakasira opined that a divorce was in Irby's best interest and that it would be detrimental to Irby's health to remain married to Collins. Dr. Madakasira testified consistently at the divorce hearing. Although Irby testified he did not want a divorce, the divorce was granted.

¶6. On January 17, 2012, Irby told Collins over the phone that he was forced into the divorce and had no reason to live. Irby committed suicide at his home later that day.

¶7. On December 16, 2013, Collins sent Dr. Madakasira and his employer, Psycamore

3

LLC, a notice of intent to commence a medical-malpractice action based on wrongful death. *See* Miss. Code Ann. § 15-1-36(15) (Rev. 2012) (requiring at least sixty days' prior written notice of intent to begin a professional-negligence claim against healthcare providers). On March 17, 2014, Collins filed her complaint in Hinds County Circuit Court, First Judicial District. The complaint alleged that Dr. Madakasira and Psycamore, through the doctrine of respondeat superior, negligently caused Irby's death by suicide. It was later determined that the proper venue was Rankin County, and an agreed order was entered transferring the case to Rankin County Circuit Court.

¶8. After the case was transferred, Collins was granted leave to file an amended complaint. The amended complaint alleged negligence and added a claim for "intentional acts." The amended portion of the complaint alleged that "[a]s a direct and proximate result of the intentional acts of Dr. Madakasira in assisting the conservators in the prosecution of the divorce action and the granting of a divorce by the Chancery Court[,] Stuart M. Irby developed an irresistible impulse to commit suicide[.]"

¶9. Dr. Madakasira moved to dismiss the case on the grounds that the one-year statute of limitations for intentional torts barred the action and that any negligence claims were barred for failure to state a claim upon which relief can be granted. After a hearing, the circuit court granted the motion to dismiss. Collins's motion for reconsideration was denied. On appeal, Collins argued that the two-year statute of limitations for professional negligence applies and that the case should be reversed and remanded for discovery and further proceedings.[1] On

---

[1] Collins sent a notice-of-claim letter on December 16, 2013, which tolled the statute of limitations for sixty days. *See* Miss. Code Ann. § 15-1-36(15) ("If the notice is served

4

rehearing, Collins further argues that the statute of limitations was tolled by the minor's savings clause.

## STANDARD OF REVIEW

¶10.    We review de novo a trial court's decision to grant a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted.  *Stockstill v. State*, 854 So. 2d 1017, 1019-20 (¶4) (Miss. 2003).   When considering a Rule 12(b)(6) motion to dismiss, "the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of her claim."  *Stockstill*, 854 So. 2d at 1020 (¶4).

## DISCUSSION

### I.       Whether the minor's savings clause tolled the statute of limitations.

¶11.    The circuit court found that the one-year statute of limitations for intentional torts applied, barring the claim.  It further dismissed Collins's negligence claim, finding that while within the two-year statute of limitations for negligence, a negligence cause of action cannot be sustained for a claim for wrongful death by suicide.

¶12.    On rehearing, Collins asserts for the first time that the statute of limitations was tolled by the minor's saving statute, thus making the complaint timely under both the one- and two-year statutes of limitations.  Collins's argument is based on the Mississippi Supreme Court's

within sixty (60) days prior to the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended sixty (60) days from the service of the notice for said health care providers and others.").  Thus, the two-year statute of limitations would have run on March 18, 2014.

decision in *Pioneer*, 214 So. 3d at 259, which handed down on March 23, 2017, five days prior to our original decision affirming the circuit court's dismissal.[2]

¶13.    *Pioneer* changed the law regarding the application of the minor's savings statute, section 15-1-59, to wrongful-death actions.  Prior to *Pioneer*, the binding case on this issue was *Curry v. Turner*, 832 So. 2d 508 (Miss. 2008).  *Curry* held that the minor's savings statute did not toll the period to file a wrongful-death action when a qualified person existed to bring suit during the limitations period.  *Id.*; *see TRK LLC v. Myles*, 214 So. 3d 191, 197 (¶21) (Miss. 2017) (citing Miss. Code Ann. § 11-7-13 (Supp. 2016)) (Qualified persons include: (1) the deceased's personal representative; (2) the deceased's widow, husband, child, father, mother, sister or brother or unborn quick child; and (3) "all interested parties.").  The supreme court in *Pioneer* held that *Curry* went too far in finding "that the *mere existence* of someone qualified to bring a wrongful-death suit . . . precluded the application of the [minor's savings] statute[.]"  *Pioneer*, 214 So. 3d at 261 (¶3) (emphasis in original).  The supreme court found instead that "only when someone who is qualified to bring a wrongful-death suit *actually files a wrongful-death suit* on the minor beneficiaries' behalf

---

[2] Generally, this Court will not consider issues that were not first presented to the trial court.  *Mid-S. Retina LLC v. Conner*, 72 So. 3d 1048, 1051 (¶11) (Miss. 2011).  However, an exception to this rule is made for changes in law that occur during the pendency of an appeal.  *Id.* at 1052 (¶13).  As our supreme court has held, unless designated as prospective, "newly enunciated rules of law are applied retroactively to cases that are pending trial or that are on appeal, and not final at the time of the enunciation."  *Id.*  When *Pioneer* was decided, this appeal was pending before this Court.  As *Pioneer* is an intervening change in law—decided after trial but before the completion of this appeal—and is not designated as prospective, Collins "is entitled to have [this] case decided in accordance with it."  *James v. State*, 829 So. 2d 728, 729 (¶7) (Miss. Ct. App. 2002).  Thus, this issue may be raised for the first time on appeal.  *Mid-S. Retina*, 72 So. 3d at 1052 (¶14).

6

will the minors savings clause not apply, because, once the suit is filed, the running of the statute of limitations is immaterial." *Id.* (emphasis added). Importantly, the wrongful-death statute states that "there shall be but one (1) suit for the same death[,] which shall ensue for the benefit of all parties concerned, but the determination of such suit shall not bar another action unless it be decided on its merits." Miss. Code Ann. § 11-7-13.

¶14. Collins asserts on rehearing that she did not argue tolling before the trial court or in her initial brief on appeal because, at that time, *Curry* was still in effect, and qualified persons existed who could have brought suit during the statute of limitations. Collins is not qualified to recover under the wrongful-death statute, since she and Irby were divorced at the time of his death. *See id.* (Wrongful-death beneficiaries—a more limited class than one qualified to bring suit under the wrongful-death statute—include: "the widow, husband, child, father, mother, sister or brother of the deceased or unborn quick child[.]"). Collins states that Irby was survived by two adult children, who were qualified under the statute to bring suit. Thus, under *Curry*, the limitations period in the wrongful-death statute was not tolled by the minor's saving statute because qualified persons existed. Collins now argues that since the supreme court's decision in *Pioneer* overruled *Curry*'s holding, the statute of limitations under the minor's savings clause as to Graham was tolled, making the suit timely.

¶15. In *Pioneer*, the minor beneficiaries (the decedent's children) had an aunt who was qualified under the wrongful-death statute as the decedent's sister to file a wrongful-death suit, but she did not file one. *Pioneer*, 214 So. 3d at 261 (¶3).[3] The aunt petitioned for

_____

[3] While she had standing to file suit, the aunt in *Pioneer* was "statutorily precluded from recovering any damages . . . , [as] any wrongful-death damages belong[ed] exclusively

guardianship of the children, specifically requesting authorization to file a wrongful-death claim or make a settlement for damages on their behalf. *Id.* at 262 (¶7). The chancellor granted the petition and entered an order of guardianship as to the older child. *Id.* at (¶8). A notice-of-claim letter was sent to the treating hospital and physician, but a suit was not pursued. *Id.* at 261 (¶6). Later, the guardianship action was dismissed as to the older child because the aunt never filed an oath or letters of guardianship. *Id.* at 262 (¶8). An order of guardianship was never entered for the younger child, and this action was dismissed as well. *Id.*

¶16. Shortly after turning twenty-one, the older child filed a wrongful-death suit on behalf of all wrongful-death beneficiaries against the hospital and physician. *Id.* at (¶9). The hospital and physician argued the statute of limitations had run because the aunt could have filed suit during the limitations period. *Id.* at 264 (¶22). The supreme court found that the minor's saving statute tolled the statute of limitations because the aunt "had been neither appointed guardian nor authorized by the chancery court to bring an action on [the children's] behalf." *Id.* at 266 (¶¶29-31). It further found that the aunt's existence as a person with standing did not preclude application of the minor's saving statute. *Id.*

¶17. The supreme court in *Pioneer* cited *U.S. Fidelity & Guaranty Co. v. Conservatorship of Melson*, 809 So. 2d 647, 653 (¶25) (Miss. 2002), which found the minor's saving clause inapplicable where the minor had a conservator with full authority to bring suit during the statute of limitations. *Pioneer*, 214 So. 3d at 266 (¶28). Because the legal right to file suit

---

to [the decedent's] two daughters." *Pioneer*, 214 So. 3d at 265-65 (¶23) ("[W]ho has statutory standing to bring suit is broader than who may recover damages.").

lay with the conservator, Mississippi Code Annotated section 15-1-53 (Rev. 2012) precluded tolling. Section 15-1-53 states:

> When the legal title to property or a right in action is in an executor, administrator, guardian, or other trustee, the time during which any statute of limitations runs against such trustee shall be computed against the person beneficially interested in such property or right in action, although such person may be under disability and within the saving of any statute of limitations; and may be availed of in any suit or actions by such person.

¶18.    "[U]nder [section] 15-1-53, if a person who is subject to infancy or unsoundness of mind does in fact *have a guardian or conservator appointed for them*, then the action may be brought in the name of that guardian or conservator, without the consideration of any savings clause." *Melson*, 809 So. 2d at 653-54 (¶27) (emphasis added). In holding the savings statute inapplicable in *Melson*, the supreme court reasoned that "[w]here a guardian or conservator has been *court*[-]*appointed* for a ward, there is no logical or equitable reason to prevent the running of the statute of limitations inasmuch as that guardian or conservator is fully authorized to employ attorneys and bring actions on their behalf." *Id.* at 654 (¶27) (emphasis added) (citing *McCain v. Memphis Hardwood Flooring Co.*, 725 So. 2d 788 (Miss. 1998) (finding that the statute of limitations is not tolled when a person of unsound mind has a guardian)).

¶19.    Applying this holding in *Pioneer*, the supreme court held that because "no oath had been filed" by the aunt "and no letters of guardianship had been entered" on behalf of the oldest of the minor children, the child "did not 'in fact have a guardian appointed for her' who had the legal authority to bring a suit on her behalf." *Pioneer*, 214 So. 3d at 266 (¶30) (quoting *Melson*, 809 So. 2d at 653-54 (¶27)). Thus, because there was no one with a legal

9

duty to bring suit on the minors' behalf, the savings statute tolled the statute of limitations. *Id.*

¶20.    There is no indication here that Collins had a legal duty to file suit on Graham's behalf. Collins did not appear as Graham's court-appointed guardian. Rather, she appeared as his mother and next friend. As Graham's mother, Collins had *standing* to file suit on his behalf. However, our decision hinges on whether Collins's status as his mother and next friend bestowed on her the *duty* to file suit within the statute of limitations. Black's Law Dictionary (10th ed. 2014) defines "next friend" as "[s]omeone who appears in a lawsuit to act for the benefit of an incompetent or minor plaintiff, but who is not a party to the lawsuit and is not appointed as a guardian."

¶21.    While not in the context of a wrongful-death claim, the supreme court discussed this issue in *Vice v. Department of Human Services*, 702 So. 2d 397 (Miss. 1997). In *Vice*, Pamela Smith sued Ronald Vice for a child-support arrearage he had been ordered to pay seven years prior. *Id.* at 398 (¶2). Smith argued the minor's savings statute tolled the three-year statute of limitations. *Id.* at 399 (¶10). Vice countered that the minor's savings statute was inapplicable because Smith could have brought suit on the children's behalf during the statute of limitations. *Id.* at 400 (¶15). The supreme court found no merit to Vice's argument. *Id.* The supreme held that because Smith, the custodial parent, was "not a real party in interest sufficient to bar the child's recovery of past-due support payments[,] . . . it would 'defy reason' to allow the statute of limitations to run during the disability of the child." *Id.* at (¶17). Instead, "where a minor holds the legal right, . . . the statute of

10

limitations does not begin to run until the disability of minority is removed." *Id.* at (¶14).

¶22.    Further, in *Thiroux ex rel. Cruz v. Austin ex rel. Arceneaux*, 749 So. 2d 1040, 1041 (¶1) (Miss. 1999), William Albert Thiroux Jr. was murdered, leaving his two minor children as his sole heirs at law. Almost three and a half years later, the children's legal guardian brought a wrongful-death suit on their behalf against the murderer. *Id.* While the supreme court's opinion in *Thiroux* does not discuss the guardian's relationship to the children, the supreme court in *Curry* noted that "[t]he children's guardian in *Thiroux* did not meet the qualification of being a person in esse because, under the wrongful[-]death statute, the guardian was not entitled to bring the suit." *Curry*, 832 So. 2d at 516 n.5. The supreme court in *Thiroux* found that the minor's savings statute tolled the one-year statute of limitations as to the minor children. *Thiroux*, 749 So. 2d at 1042 (¶4).

¶23.    Collins was not a qualified beneficiary under the wrongful-death statute, nor is there any evidence she had been court appointed to bring suit on Graham's behalf. Rather, she brought suit as Graham's mother and next friend. Applying *Pioneer*, we find that the minor's saving statute tolled the statute of limitations, making the suit timely under either the one- or two-year statute of limitations. Thus, we reverse and remand for further proceedings. However, as explained below, the proceedings shall be limited to Collins's intentional-tort claim, as the trial court correctly dismissed Collins's negligence cause of action.

   II.    **Whether Collins can sustain a negligence cause of action for Irby's suicide.**

¶24.    To the extent that Collins's complaint alleges negligence, we find these claims were correctly dismissed for failure to state a claim upon which relief can be granted.

11

¶25. Collins's original complaint alleged only medical negligence. In November 2014, after Collins's complaint was filed, the Mississippi Supreme Court handed down its decision in *Truddle v. Baptist Memorial Hospital-DeSoto Inc.*, 150 So. 3d 692 (Miss. 2014). The parties agree that *Truddle* is the controlling case for actions for wrongful death by suicide. *Truddle* states that "to sustain a cause of action for a suicide . . . , the plaintiff must show that the defendant committed an *intentional act* that [proximately caused] an irresistible impulse [in the decedent] to commit suicide[.]" *Id.* at 697 (¶19) (emphasis added) (citing *State ex rel. Richardson v. Edgeworth*, 214 So. 2d 579, 586-88 (Miss. 1968)). This is an exception to common law, which prohibited recovery for wrongful death by suicide, as "suicide is an 'unforeseeable, intervening cause[,] which breaks the causal connection between the wrongful act and the death.'" *Truddle*, 150 So. 3d at 695 (¶11) (quoting *Edgeworth*, 214 So. 2d at 586).

¶26. After *Truddle* handed down, the circuit court granted Collins leave to amend the complaint to comply with *Truddle*'s intentional-act pleading requirement. However, the amended complaint still contained negligence allegations.

¶27. Collins's amended complaint alleges the following negligent acts: (1) Dr. Madakasira "[f]ail[ed] to properly monitor [Irby's] mental health"; and (2) Dr. Madakasira "[f]ail[ed] to prescribe an appropriate treatment for . . . Irby to prevent his suicide in spite of the fact that Dr. Madakasira was well aware of Irby's history and his suicidal ideations." These negligence allegations do not state a cause of action under *Truddle*, since a wrongful-death action for suicide cannot be sustained solely based on allegations of "medical malpractice,

12

i.e., negligence." *Truddle*, 150 So. 3d at 697 (¶15).[4]

¶28.    "A medical-malpractice cause of action in Mississippi tracks the typical negligence action[.]" *Id.* at (¶16).  The plaintiff must prove: "(1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such a duty by the defendant." *Id.* (quoting *Johnson v. Pace*, 122 So. 3d 66, 68 (¶8) (Miss. 2013)).  In proving these elements, the plaintiff must show "a *causal connection* between the breach and the [injury], such that the breach is the proximate cause of the [injury]." *Double Quick Inc. v. Lymas*, 50 So. 3d 292, 298 (¶30) (Miss. 2010) (emphasis added).

¶29.    However, "suicide constitutes 'an independent, intervening[,] and superseding event that severs the causal nexus between any wrongful action on the part of the defendant.'" *Truddle*, 150 So. 3d at 697 (¶17) (quoting *Shamburger v. Grand Casino of Miss. Inc./Biloxi*, 84 F. Supp. 2d 794, 798 (S.D. Miss. 1998)).  "[A] rebuttable presumption exists 'that a person will not destroy himself by suicide.'" *Id.* at 695 (¶11) (quoting *Edgeworth*, 214 So. 2d at 585).  Recovery for a wrongful suicide death is permissible only when the defendant committed an intentional act that created "an irresistible impulse in the decedent to take his or her own life." *Id.* (citing *Edgeworth*, 214 So. 2d at 586-88).  "[W]here the suicide is committed in response to an uncontrollable impulse, recovery may be had if the mental state

---

[4] The supreme court discussed an exception to its finding in *Truddle* for cases where the decedent was under the defendant's custody and control, such as in a mental facility. *Truddle*, 150 So. 3d at 697-98 (¶¶20-22).  The exception does not apply here, as there is no allegation that Irby was under Dr. Madakasira's or Psycamore's custody or control.

of [the] deceased was substantially caused by the defendants' intentional wrongful acts." *Edgeworth*, 214 So. 2d at 587. In recognizing this exception to the common-law rule barring recovery for suicide, "[t]he *Edgeworth* [c]ourt reasoned that intentional acts which cause an irresistible impulse to commit suicide should be compensable because 'a higher degree of responsibility is imposed upon a wrongdoer whose conduct was intended to cause harm than upon one whose conduct was negligent.'" *Truddle*, 150 So. 3d at 696 (¶11) (quoting *Edgeworth*, 214 So. 2d at 587).

¶30.   "Nothing in Mississippi caselaw, save the irresistible-impulse doctrine, . . . abrogates the general rule that suicide constitutes 'an independent, intervening[,] and superseding event that severs the causal nexus between any wrongful action on the part of the defendant.'" *Id.* at (¶17). As stated by the United States District Court for the Northern District of Mississippi, "[a]pplying the substantive law of the State of Mississippi, a claim for wrongful suicide death can be maintained only where it can be shown that as a result of defendant's intentional torts, decedent acted under an irresistible impulse in committing suicide." *Hare v. City of Corinth*, 814 F. Supp. 1312, 1326 (N.D. Miss. 1993) (vacated and remanded on other grounds, 74 F.3d 633 (5th Cir. 1996)). The holding in *Truddle* specifically extended this principle to medical-malpractice claims. *Truddle*, 150 So. 3d at 697 (¶18).

¶31.   Therefore, under *Truddle*, while a claim for wrongful suicide death under the irresistible-impulse doctrine set out in *Edgeworth* may be sustained based on a doctor's actions, the claim cannot lie in medical negligence. *Id.* at (¶17).[5] While *Truddle* discusses

---

[5] In finding that the irresistible-impulse doctrine extends to medical-negligence claims, the supreme court cited *Haney v. River Oaks Hospital*, 2006-CA-00219-SCT (Order,

14

a possible exception for circumstances where the decedent was under the custody and control of a physician or facility, such as a mental institution, that exception does not apply here. *Id.* at 697-98 (¶¶20-22). Therefore, the claim must stem from an intentional tort. *Id.* Because the suicide action must be based on an intentional tort, Collins's negligence claims do not state a cause of action for which relief can be granted and were correctly dismissed.

¶32. We disagree with the dissent's finding that *Truddle* permits a medical-negligence cause of action for Irby's suicide death. First, *Truddle* clearly states that an intentional act must be pled to support a cause of action for suicide, and our caselaw is well established that an intentional act cannot form the basis of a negligence claim. *Id.* at 697 (¶19); *Jordan v. Wilson*, 5 So. 3d 442, 447 (¶18) (Miss. Ct. App. 2008) ("[A]n intentional tort cannot be committed negligently."). Second, a medical-negligence claim cannot be sustained based on Irby's suicide because "suicide constitutes 'an independent, intervening[,] and superseding event that severs the causal nexus between any wrongful action'" of Dr. Madakasira and Irby's death. *Truddle*, 150 So. 3d at 697 (¶17) (quoting *Shamburger*, 84 F. Supp. 2d at 798). If Irby's death had not been the result of suicide, we would agree with the dissent that the medical-negligence action could be sustained. However, in wrongful-suicide-death cases, "a higher degree of responsibility" than negligence must be demonstrated to recover damages. *Truddle*, 150 So. 3d at 696 (¶11). Thus, based on the facts presented, there is no negligence cause of action for which relief can be granted.

---

May 17, 2007), which involved "a medical-negligence action against a doctor and hospital where a patient committed suicide after being released from the hospital over her family's objections." *Truddle*, 150 So. 3d at 697 (¶18). The supreme court noted that it affirmed per curiam the finding of summary judgment in favor of the doctor and hospital. *Id.*

15

¶33. The dissent argues that the supreme court's recent decision in *Singing River Health System v. Vermilyea*, 2016-IA-01096-SCT, 2018 WL 1323581 (Miss. Mar. 15, 2018), provides an exception allowing Collins to pursue her negligence claim based on Dr. Madakasira's assumption of a duty of care as Irby's psychiatrist. We disagree. In *Singing River*, Randy Vermilyea threatened to commit suicide by jumping off a bridge. *Id.* at *1 (¶2). Law-enforcement officers spent ninety minutes talking him off the edge of the bridge and then took him to the Singing River Hospital emergency room. *Id.* He was admitted, evaluated, and released a few hours later—alone, without shoes, and without any attempt by hospital staff to contact his family to inform them of the suicide attempt. *Id.* Vermilyea called his daughter to pick him up, and, within minutes of his discharge, he jumped to his death from a bridge. *Id.* Vermilyea's wife and daughter sued Singing River, claiming in an amended complaint that it had failed to exercise reasonable care and attention to his mental and emotional condition—specifically, that it:

> failed to assess and treat . . . Vermilyea's psychiatric condition, failed to hospitalize him, negligently and prematurely released him from the hospital, failed to take reasonable steps to prevent him from harming himself, failed to follow the standard of care applicable to a depressed and suicidal patient, and failed to inform [his wife or daughter] of his attempted suicide and need for follow-up care.

*Id.* at (¶3). His daughter also alleged negligent infliction of emotional distress, as she had witnessed the suicide. *Id.*[6]

---

[6] The amended complaint actually alleged *intentional* infliction of emotional distress. *Singing River*, 2018 WL 1323581, at *1 (¶3). However, the supreme court found the claim was mislabeled and was actually one for *negligent* infliction of emotional distress. *Id.* at *7 (¶28) (citing *Sanderson Farms Inc. v. McCullough*, 212 So. 3d 69, 74-75 (¶13) (Miss. 2017) (holding that a complaint's "substance prevails over form")).

16

¶34. Singing River moved to dismiss the amended complaint under Rule 12(b)(6) for failure to state a claim upon which relief could be granted because all the claims were negligence based. *Id.* at \*2 (¶4). Citing *Truddle*, Singing River argued that the plaintiffs were required to plead intentional conduct, leading to an irresistible impulse in Vermilyea to commit suicide. *Id.* Without an allegation of intentional conduct, Singing River argued, the claim failed as a matter of law. *Id.* The trial court denied the motion, and the supreme court affirmed the decision upon interlocutory review. *Id.* at \*7 (¶29). The supreme court, also citing *Truddle*, found that while suicide generally breaks the causal nexus between the defendant's actions and the suicide death in a medical-negligence case, this rule does not apply when the facility had the duty to safeguard a decedent/patient who was in its "custody and control" and the facility had "the ability to control the patient's conduct." *Id.* at \*5 (¶19).

¶35. When the facility assumes a duty of care for a patient who is under its custody and control, and it is foreseeable that a breach of that duty could result in immediate suicide, liability exists "for the [facility's] negligent failure to prevent . . . [the] act of self-harm." *Id.* The supreme court held that this exception includes the negligent discharge of a suicidal patient, because "[n]egligently discharging a suicidal patient and leaving him to his own devices is not materially different from failing to provide a safe environment inside the facility." *Id.* at \*7 (¶26).

¶36. While the amended complaint here alleged that Dr. Madakasira knew that Irby had threatened suicide in the past and that his suicide was foreseeable, there was no allegation that Irby was under Dr. Madakasira's custody or control or that he had recently been under

17

any doctor's or facility's custody or control and negligently discharged, as *Singing River* requires. *Id.* at \*5 (¶19) (citing *Truddle*, 150 So. 3d at 695 (¶6) (holding that no medical-negligence cause of action existed for the decedent's suicide death where the decedent was discharged from the hospital six days prior to his death)). Rather, Irby was simply receiving treatment from Dr. Madakasira as his psychiatrist. Thus, the dissent's reliance on *Singing River* is misplaced. We do note, however, that the supreme court in *Singing River* reaffirmed that "the general rule that suicide is 'an independent, intervening and superseding event' that breaks the causal nexus between the defendant's wrongful act and the death" and that this principle "extends to medical-malpractice claims." *Id.* at \*3 (¶13). That is, in a medical-negligence action for a suicide death, unless an exception to the general rule is found, the third element of negligence—causation—cannot be sustained. *Id.* The dissent cites no exception to the general rule. On remand, Collins can assert the allegations in the amended complaint that raise an intentional-tort cause of action; but there is no basis in our law for a negligence cause of action, since no exception to the intentional-act pleading requirement has been alleged.

¶37. We also disagree with the dissent's statement that our decision effectively holds "that intentional conduct cannot serve as the basis for a medical-malpractice action." The dissent asserts that this decision departs from our holding in *Chitty v. Terracina*, 16 So. 3d 774 (Miss. Ct. App. 2009). In *Chitty*, we held that whether a doctor's "alleged actions were intentional, or merely negligent, is not determinative" of whether a claim falls under the medical-malpractice statute; rather, "the main issue" is "whether the tort arises out of the

18

course of medical, surgical or other professional services." *Id.* at 779 (¶12). We do not stray from that decision. We acknowledge that the plain language of our medical-malpractice statute encompasses all applicable torts against physicians; it is not limited to the tort of negligence. The statute specifically states that "*no claim in tort* may be brought against a licensed physician . . . [for] wrongful death arising out of the course of medical, surgical or other professional services[.]" Miss. Code Ann. § 15-1-36(2) (emphasis added).[7] Regardless, the issue before us on rehearing is not whether an intentional tort can form the basis of a medical-malpractice claim, but whether a medical professional's negligence can be the proximate cause of Irby's suicide.

¶38.    Taking the allegations in the complaint as true, Collins's medical-negligence allegations do not state a claim upon which relief can be granted. Suicide is an independent, intervening, and superseding event that breaks the nexus between any alleged wrongful act of Dr. Madakasira and Irby's death. Without this nexus, a causal connection for a medical-negligence action cannot be formed, and the claims cannot be sustained. The trial court correctly dismissed the negligence allegations in the complaint.

###    III.    Whether Collins's complaint alleges an intentional tort sufficient to sustain a cause of action for wrongful death by suicide.

¶39.    To comply with *Truddle's* intentional-act pleading requirement, Collins moved for,

---

[7] We note that the medical-malpractice statute also states that "[n]o action based upon the health care provider's *professional negligence* may be begun unless the defendant has been given at least sixty (60) days' prior written notice of the intention to begin the action." Miss. Code Ann. § 15-1-36(15) (emphasis added). Either this means that notice is only required for negligence claims, or that only negligence actions can be brought under the medical-malpractice statute. However, this issue has not been decided by our supreme court, and it is unnecessary to address it here.

19

and was granted, leave to amend the complaint. The pertinent section of the amended

complaint reads:

INTENTIONAL ACTS OF DEFENDANT

        . . . .

15.     Dr. Madakasira knowingly engaged in a course of conduct with the
conservators of Stuart M. Irby to have a divorce granted to Irby by the action
prosecuted by the conservators even though Stuart Irby expressed his
opposition to the divorce. By advising with the conservators in the divorce
action, which resulted in a divorce being granted, Dr. Madakasira stepped
outside of the psychiatrist-patient relationship and created a conflict of interest
with his patient, Stuart Irby. As Irby's attending psychiatrist for several years,
Dr. Madakasira knew that Stuart Irby was mentally and emotionally fragile and
that he had threat[en]ed to commit suicide in the past. However,
notwithstanding his personal knowledge of lrby's mental condition[,] Dr.
Madakasira intentionally participated with the conservators to secure a divorce
for Stuart Irby from his wife, [Collins,] and took an active part in the chancery
court proceedings which resulted in the divorce being granted against Stuart
Irby's will.

16.     As a direct and proximate result of the intentional acts of Dr.
Madakasira in assisting the conservators in the prosecution of the divorce
action and the granting of a divorce by the Chancery Court[,] Stuart M. Irby
developed an irresistible impulse to commit suicide and on January 17, 2012[,]
he committed suicide.

17.     The intentional conduct of Dr. Madakasira, as aforesaid, created an
irresistible impulse in Stuart Irby to commit suicide so that he took his own
life. Based upon the negligence and intentional acts of the defendants it was
foreseeable that Stuart M. Irby would commit suicide.

18.     Madakasira's intentional conduct, as aforesaid, was the proximate cause
or a proximate contributing cause of the irresistible impulse suffered by Stuart
M. Irby to commit suicide and rendered him unable to discern the nature or
consequences of suicide which was the proximate cause or was a proximate
contributing cause of Stuart Irby's wrongful death.

¶40.    The trial court found the allegations in the amended complaint sounded in intentional

tort, and thus were barred by the one-year statute of limitations. In her original brief on

20

appeal, Collins vehemently argued that all claims in the complaint were negligence-based, as any intentional-tort claims were barred by the one-year statute of limitations. On the contrary, on rehearing, we are only looking at the intentional-act allegations, which were required to be pled under *Truddle*, to determine if the amended complaint states a claim upon which relief can be granted.

¶41. While we have found the statute of limitations was tolled as to either claim, the distinction between the claims is important, as we must determine whether Collins's complaint states a claim for which relief can be granted on remand. Although Collins originally argued that the complaint alleged only negligence, "[s]ubstance prevails over form." *Sanderson Farms Inc. v. McCullough*, 212 So. 3d 69, 74 (¶13) (Miss. 2017). We are "not bound by the claims set forth in [the complaint]." *Id.* Rather, "[t]he question . . . is whether the *substance* of [the] claim . . . sounds in intentional tort or negligence." *Id.* at 75 (¶13).

¶42. Despite Collins's original assertion that the claims sound in negligence, an intentional act cannot form the basis of a negligence claim. "Negligence is a failure to do what [a] reasonable person would do under the same or similar circumstances," resulting in a breach of the applicable standard of care and injury to the plaintiff. *Estate of St. Martin v. Hixson*, 145 So. 3d 1124, 1128 (¶9) (Miss. 2014). Intent "denotes that the actor desires to cause the consequences of his act." *S. Farm Bureau Cas. Ins. v. Allard*, 611 So. 2d 966, 968 (Miss. 1992) (quoting Restatement (Second) of Torts § 8A(a) (1965)). Intentional behavior designed to bring about the plaintiff's injury forms the basis of an intentional tort, *id.*, and

21

"an intentional tort cannot be committed negligently." *Jordan*, 5 So. 3d at 447 (¶18).

¶43.   "[A] claim alleging an intentional tort and a claim alleging negligence are mutually exclusive, in that, one who is found to have acted negligently cannot at the same time be found to have acted intentionally." *Id.* While our law permits a party to allege inconsistent claims based on negligence and intentional tort, *id.* at 448 (¶19) (citing M.R.C.P. 8), this is not what Collins alleges. Rather, Collins alleges that Dr. Madakasira's intentional acts serve as the basis for the negligence claim. There is no basis in our law to support this argument. *See id.* at 447-48 (¶¶18-19).

¶44.   Thus, we look to the amended complaint's substance to determine whether its claims lie in negligence or intentional tort. *See Howard v. Wilson*, 62 So. 3d 955, 956 (¶6) (Miss. 2011). Collins's amended complaint alleges the following intentional acts: "Dr. Madakasira intentionally participated with the conservators to secure a divorce for . . . Irby from his wife, [Collins,] and took an active part in the chancery court proceedings which resulted in the divorce being granted against . . . Irby's will," and this "intentional conduct . . . created an irresistible impulse in . . . Irby to commit suicide." The first sentence of the punitive-damages section of the complaint states, "Dr. Madakasira[] willfully, deliberately[,] and intentionally participated in the divorce proceedings against the will and wishes of . . . Irby[,] which resulted in a divorce which Mr. Irby did not want and resulted in Mr. Irby being forced to divorce his wife against his will."

¶45.   We find these allegations—that Dr. Madakasira acted "knowingly," "intentionally," "active[ly]," "willfully," and "deliberately"—sound in intentional tort, regardless of the title

22

Collins gives them.[8] We further find that Collins's intentional-tort claims do not state a claim for medical malpractice. A medical-malpractice claim must "aris[e] out of the course of medical, surgical[,] or other professional services[.]" Miss. Code Ann. § 15-1-36(2). The amended complaint, under the section titled "INTENTIONAL ACTS OF DEFENDANT," states that "[b]y advising with the conservators in the divorce action, which resulted in a divorce being granted, Dr. Madakasira *stepped outside of the psychiatrist-patient relationship* and created a conflict of interest with his patient, Stuart Irby." (Emphasis added). As Collins alleges Dr. Madakasira's intentional acts were committed "outside of the psychiatrist-patient relationship," not arising out of the course of it, the intentional-act allegations do not fall within the medical-malpractice statute.

¶46.    Looking at the substance of the amended complaint, we find the alleged intentional acts lie in intentional tort. While we make no finding as to the merits of the complaint, we find that the complaint alleges sufficient intentional acts to survive a Rule 12(b)(6) motion to dismiss. As the statute of limitations is no longer at issue due to the minor's saving statute, we find the intentional act allegations in the complaint may be viable, even though those acts arise in a medical context. Therefore, we remand this matter to the circuit court for further proceedings on Collins's intentional-tort claims.

**CONCLUSION**

¶47.    Under the supreme court's holding in *Pioneer*, we find the minor's savings statute

---

[8] While not titled as such, the claims sound akin to intentional infliction of emotional distress, which "is of like kind or classification as the torts enumerated in . . . [s]ection 15-1-35[.]" *Jones v. Fluor Daniel Servs. Corp.*, 32 So. 3d 417, 425 (¶36) (Miss. 2010).

23

tolled the statute of limitations. While making no comment as to the merits of the complaint, we further find that Collins's amended complaint alleged sufficient intentional acts to survive a Rule 12(b)(6) motion to dismiss. Thus, we reverse this matter for further proceedings. However, as the wrongful-death claim for Irby's suicide must lie in intentional tort, the remand proceedings shall be limited to the claims raised for intentional tort. *See Truddle*, 150 So. 3d at 697 (¶17). Collins's negligence claims were correctly dismissed for failure to state a claim upon which relief can be granted, as a negligence cause of action for suicide cannot be sustained on the facts of this case.

¶48. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**GRIFFIS, P.J., WILSON, GREENLEE AND TINDELL, JJ., CONCUR. LEE, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., CARLTON AND WESTBROOKS, JJ. FAIR, J., NOT PARTICIPATING.**

**LEE, C.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶49. I agree with the majority that pursuant to the supreme court's decision in *Pioneer Community Hospital of Newton v. Roberts*, 214 So. 3d 259 (Miss. 2017), the minor's saving statute applies to Irby's claim through Collins and tolled the statutory limitations period. Therefore, Collins's claim was timely.

¶50. However, I disagree with the majority that the application of the minor's saving statute is necessary to preserve Collins's intentional-act claim and that the trial court was correct in dismissing Collins's negligence claim. Additionally, I still disagree—as I did with the previous, now-withdrawn opinion—with the majority decision that Collins's claim on remand is limited to simply an intentional tort. Collins's amended complaint asserted two

medical-malpractice claims for Irby's wrongful death by suicide—one for negligence and one for an intentional act. Both are medical-malpractice claims to which the two-year statute of limitations applies—therefore, both of Collins's claims were already timely filed.

¶51. The majority states that "the trial court correctly dismissed Collins's negligence cause of action as there is no basis for a negligence action for wrongful death by suicide. Thus, it is unnecessary for the trial court to revisit the negligence issue on remand." However, I find that supreme court's recent decision in *Singing River Health Systems v. Vermilyea*, 2016-IA-01096-SCT, 2018 WL 1323581 (Miss. Mar. 15, 2018), clearly demonstrates that both the claims asserted in this case are recoverable theories under medical malpractice, and further, that it was error for the trial court to dismiss the negligence count for failure to state a claim. I also find that the majority misconstrues *Truddle v. Baptist Mem'l Hosp.-DeSoto Inc.*, 150 So. 3d 692 (Miss. 2014), in which our supreme court unequivocally categorized the intentional-act claim at issue as one for medical malpractice. Accordingly, I find that—notwithstanding the application of the minor's saving statute—Collins's claims were already timely filed under the two-year statute which applies to medical-malpractice claims. As such, I also find that, on remand, both of Collins's claims are for medical-malpractice and the suit on remand is not limited to, nor characterized as simply an intentional-tort claim. Thus, I respectfully dissent.

¶52. Mississippi's medical-malpractice statute, Mississippi Code Annotated section 15-1-36 (Rev. 2012), "makes no such distinction between intentional and unintentional torts . . . ." *Chitty v. Terracina*, 16 So. 3d 774, 778 (¶10) (Miss. Ct. App. 2009). Rather, "the main issue

25

[is] whether the tort 'arises out of the course of medical, surgical or other professional services.'" *Id*. at 779 (¶12) (citing Miss. Code Ann. § 15-1-36)). Thus, whether Dr. Madakasira's "alleged actions were intentional, or merely negligent, is not determinative." *Id.* Here, both of Collins's claims asserted against Dr. Madakasira complain of tortious conduct arising out of the course of his medical-professional services as Irby's psychiatrist. Therefore, Collins's claims are medical-malpractice claims. The supreme court's decisions in both *Truddle* and *Singing River* demonstrate as much.

¶53. In the instant case, Collins's amended complaint for Irby's wrongful death by suicide stated two counts for recovery: (1) negligence—"that Dr. Madakasira breached the minimum standards of care which he owed to [Irby] . . . [and] [a]s a direct and proximate cause, or a contributing cause . . . Irby committed suicide[,]" and (2) irresistible-impulse/intentional act—that "[a]s a direct and proximate result of the intentional acts of Dr. Madakasira . . . Irby developed an irresistible impulse to commit suicide and on January 17, 2012[,] he committed suicide." The supreme court has held both theories viable in the context of medical-malpractice claims for wrongful death by suicide.

¶54. In *Truddle*, the supreme court discussed the irresistible-impulse doctrine as it applies to medical-malpractice claims. *Truddle*, 150 So. 3d at 697 (¶18) (Miss. 2014). Most recently, in *Singing River Health Systems*, the supreme court explained that *Truddle* actually "discussed two lines of cases concerning a third party's liability for another's suicide" and "first reviewed the line of cases concerning the irresistible-impulse doctrine[,]" but then "also recognized precedent holding that liability exists if the plaintiff shows that the defendant

26

owed the decedent a certain duty of care and breached that duty,"—i.e. negligence. *Singing River*, 2018 WL 1323581, at *6-7 (¶8), *17 (¶24). Thus, Collins's suit against Dr. Madakasira for the wrongful death of Irby by suicide is one for medical-malpractice—whether it is pursued under the irresistible-impulse doctrine or under a negligence theory.

## I. Negligence

¶55. The majority finds that the trial court correctly dismissed Collins's negligence cause of action for failure to state a claim because it finds, per its interpretation of *Truddle*, there is no basis for a negligence action for wrongful death by suicide. But *Singing River* explicitly rejects the majority's finding.

¶56. In *Singing River*, the plaintiffs filed a wrongful-death suit based in medical negligence against the hospital and medical providers for the decedent's suicide following his hospital discharge. *Id*. at *2 (¶1). The defendants moved to dismiss the claim, arguing *Truddle* operated as "an absolute bar to [the plaintiff's] ability to recover for the suicide of [the decedent]." *Id*. at *4 (¶4), *6 (¶7). The trial court denied the motion to dismiss finding that *Truddle* did not apply to bar the plaintiffs' medical-negligence claim. *Id*. at *5 (¶5). The defendants filed an interlocutory appeal and the supreme court affirmed the trial court's decision, rejecting the defendant/appellant's argument. *Id*. at *1 (¶1). "We reject this argument[,]"

> that, because [the plaintiff's] amended complaint is grounded in medical negligence and does not allege that [the decedent] committed suicide either (1) while in the defendants' custody, or (2) under an irresistible impulse, proximately caused by the defendant's intentional conduct, that rendered him

27

unable to discern the nature and consequences of suicide, the complaint fails
to state a claim upon which relief may be granted.

*Id*. at \*17 (¶23). Thus, in *Singing River*, the supreme court explained that in medical-malpractice cases a cause of action for wrongful death by suicide, may be maintained under the irresistible-impulse doctrine or negligence given certain factual circumstances.

> While Truddle held that the principle that suicide is an intervening, superseding cause that breaks the causal connection between the wrongful act and the death applies in medical negligence cases, *the case also recognized precedent holding that liability exists if the plaintiff shows that the defendant owed the decedent a certain duty of care and breached that duty.*

*Id*. at \*17 (¶24) (emphasis added).

¶57. The supreme court in *Truddle* noted a particular instance where, in a medical-malpractice case, the plaintiff's claim for wrongful death by suicide could be maintained under a theory of negligence—when suicide is committed while the person is in the defendant's custody. *Id*. But, in *Singing River*, the supreme court negated the assumption that this example given in *Truddle* was the only instance where a negligence claim could apply.

> The defendants argue that the fact that [the decedent's] suicide occurred when he was outside the hospital's custody is fatal to [the] claim. They contend that *Truddle* stands for the proposition that the decedent must have been under the custody and control of the facility at the time of the death or there can be no liability for a suicide allegedly caused by medical negligence. The dissent takes this position as well. Considering the specific facts alleged in the amended complaint, *we disagree.*

*Id*. at 18-19 (¶26) (emphasis added).

¶58. The *Singing River* Court noted the defendants were "on notice that the decedent was suicidal," and that "they specifically accepted him for treatment for being suicidal and

28

depressed." *Id*. at *17-18 (¶25). As such, the supreme court stated the defendants had "assumed a duty toward [the decedent] to exercise reasonable care to safeguard him from the known danger he presented to himself, and to exercise such reasonable care for his safety as his mental condition required." *Id*. The supreme court went on to find that under the facts of the case "plaintiffs did present a claim of medical negligence regarding the death of [the decedent]" and that "the medical negligence claim was not subject to dismissal under Rule 12(b)(6)." *Id*. at *20 (¶28).

¶59. Similarly, here, Collins's amended complaint asserted a negligence claim that Dr. Madakasira, as Irby's treating psychiatrist, knew of Irby's mental condition including suicidal ideations, and also knew that Irby did not desire the divorce from Collins. The complaint further alleges that in light of this knowledge, Dr. Madakasira breached the minimum standards of care by failing to properly monitor Irby's mental health; executing an affidavit in the divorce proceeding while serving as Irby's treating physician and psychiatrist that it would be in Irby's best interest to have a divorce granted—which was in direct conflict with Irby's desire and testimony; and by failing to prescribe an appropriate treatment for Irby to prevent his suicide. Finally, the negligence claim concludes that as a "direct and proximate cause, or a contributing cause, of the breach of the minimum standard of care by [Dr. Madakasira] . . . Irby committed suicide." The facts alleged in the amended complaint state that Irby told his wife Collins in a telephone conversation that he was forced into the divorce which he did not want and that he had no reason to live. A short time later Irby was found dead in his residence, having committed suicide. I do not consider the merits of the

29

complaint and also recognize that negligence is an issue for the fact finder. However, taking the allegations of the amended complaint as true, Collins's amended complaint stated a negligence claim for Irby's death by suicide which, in accordance with *Singing River*, was not subject to dismissal under Rule 12(b)(6). Accordingly, I would reverse the trial court's dismissal of Collins's negligence claim and remand for further proceedings. Therefore, with respect to this issue, I dissent.

## II. Irresistible-Impulse Doctrine

¶60. In addition to Collins's negligence claim, which the trial court erroneously dismissed for failure to state a claim, Collins's amended complaint asserted an intentional-act claim via the irresistible-impulse doctrine. The majority finds that Collins's claim under the irresistible-impulse doctrine, which was otherwise precluded by the statute of limitations governing torts, is saved by the minor's savings statute. Additionally, the majority states that on remand, Collins's wrongful-death claim under the irresistible-impulse doctrine is simply an intentional tort and not one for medical malpractice. However, in *Truddle*, the supreme court addressed the irresistible-impulse doctrine as it applies to medical-malpractice claims arising from an individual's suicide. *Truddle*, 150 So. 3d at 697 (¶17). The claim does not cease to be one for medical malpractice simply because the irresistible-impulse doctrine requires the claimant to plead and prove an intentional act.

¶61. Again, a medical malpractice claim is one for "injuries or wrongful death arising out of the course of medical, surgical or other professional services . . . [,]" notwithstanding whether the act is negligent or intentional. Miss. Code Ann. §15-1-36. This is exactly the

30

claim Collins's makes—that Irby's wrongful death arose out of the course of medical, professional services, rendered by Dr. Madakasira—under the irresistible-impulse doctrine. Thus, because this claim is a medical-malpractice claim, the minor's savings statute is not necessary to preserve it, as it was already timely filed under the applicable statute of limitations governing medical-malpractice cases.

¶62.    Under Mississippi law, the irresistible-impulse doctrine is the exception to the general rule that a third party cannot be held liable for a decedent's suicide. *Id*. According to the irresistible-impulse doctrine, a decedent's suicide is actionable against a third-party defendant as a wrongful-death claim "only if the suicide was proximately caused by the intentional act of the defendant, creating an irresistible impulse in the decedent to take his or her own life." *Id.* at 695 (¶11) (citing *State ex rel. Richardson v. Edgeworth*, 214 So. 2d 579, 585 (Miss. 1968)). Again, *Truddle* specifically discusses how this doctrine applies to medical-malpractice actions.

¶63.    In *Truddle*, the supreme court specifically stated that the issue was "whether . . . Mississippi law bars *medical-negligence* actions arising from an individual's suicide." *Id.* at 695 (¶¶9-10). The supreme court noted that a third party cannot be held liable for a decedent's suicide except under the irresistible-impulse doctrine, and that "this principle extends to medical-malpractice claims." *Id*. at (¶18). The majority opinion acknowledges that the *Truddle* case is one of medical malpractice. Yet the majority goes on to find that the medical-malpractice claim in the instant case is an intentional-tort claim and thus subject to a one-year statute of limitations. Mississippi law is clear that a two-year statute of limitations

31

applies to medical-malpractice claims. *Estate of Johnson ex rel. Shaw v. Graceland Care Ctr. of Oxford LLC*, 41 So. 3d 692, 695 (¶10) (Miss. 2010).

¶64.    After explicitly stating the issue was "whether . . . Mississippi law bars medical-negligence actions arising from an individual's suicide," the *Truddle* court went on to discuss the irresistible-impulse doctrine's application to medical-malpractice cases. The *Truddle* court noted that the "crux of [the plaintiff's] argument . . . is that [the decedent's] suicide was the result of medical malpractice, i.e., negligence." *Truddle*, 150 So. 3d. at 696-97 (¶15). The court stated that in medical-malpractice claims, the burden is upon the plaintiff to

> prove (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such a duty by the defendant.

*Id.* at 697 (¶16). The court explained that nothing in our caselaw has abolished the rule that suicide constitutes an "independent, intervening and superseding event that severs the causal nexus between any wrongful action on the part of the defendant," *except for* the irresistible-impulse doctrine. *Id.* at (¶17) ("Nothing . . . *save* the irresistible-impulse doctrine . . . ." (emphasis added)). The court reasoned that the irresistible-impulse doctrine imposes a higher degree of responsibility because of the nature of the act, and stated: "this principle extends to *medical-malpractice* claims." *Id.* at (¶¶17-18) (emphasis added). Accordingly, the supreme court held that "[i]n such a case,"—being one for medical malpractice—"the plaintiff must show that the defendant committed an intentional act that led to an irresistible impulse to commit suicide in order to prevail." *Id.* at (¶19). The majority, however, conflates *Truddle*'s requirement that the claimant plead an intentional act or intentional

32

conduct with a claim for merely an intentional tort and removes it from the scope of the medical-malpractice statute.

¶65. In the instant case, Collins amended the complaint in order to comply with the legal standard set forth in *Truddle*—specifically, the pleading requirements. Again,

> to recover against a third party for a decedent's suicide, . . . a plaintiff must *plead* and prove: (1) the decedent was under an irresistible impulse rendering him or her unable to discern the nature or consequences of suicide, and (2) the irresistible impulse was proximately caused by the defendant's *intentional conduct*.

*Id.* at 696 (¶12) (emphasis added). As such, Collins's amended complaint alleged that Dr. Madakasira's intentional conduct of engaging with Irby's conservators, executing an affidavit, and testifying in court proceedings to obtain a divorce against Irby's wishes created an irresistible impulse in Irby to commit suicide and thus constituted medical malpractice. *Truddle* does not require the claimant to plead and prove that the defendant intended the decedent to commit suicide. Rather, *Truddle* requires that the claimant plead and prove the intentional conduct the defendant engaged in that created the irresistible impulse in the decedent to commit suicide—thereby committing medical-malpractice.

¶66. The supreme court in *Truddle* unequivocally stated that the irresistible-impulse doctrine's heightened pleading requirements apply to medical-malpractice claims. *Id.* at 697 (¶¶17-18). *Truddle* did not bar medical-malpractice actions arising from an individual's suicide, nor did it characterize the action as simply an intentional tort. Rather, the court repeatedly discussed the irresistible-impulse doctrine in the context of medical-malpractice claims and found that it did in fact apply in medical-malpractice claims: "[T]his principle

33

extends to medical-malpractice claims." *Id.* at (¶18). As such, Collins's intentional-act claim is a medical-malpractice claim—to which the statute of limitations that governs medical-malpractice claims applies: two years.

¶67. In *Truddle*, the trial court granted summary judgment for the defendants due to the plaintiff's failure to "plead[] . . . [or] create a genuine issue of material fact as to any wrongful act committed by the defendant that caused [the decedent] to commit suicide." *Id.* at 695 (¶8). That is not the case here. Collins's amended complaint pled with specificity the alleged intentional acts of Dr. Madakasira that allegedly created an irresistible impulse in Irby to commit suicide—a claim that *Truddle* characterizes as one of medical malpractice. Whether there is truth or merit to Collins's claim is not before this Court. Rather, the issue is whether the claim falls under a one-year statute of limitations or a two-year statute of limitations. Because the supreme court has very clearly categorized the claim as one for medical malpractice, it is equally clear that the statute of limitations governing medical-malpractice claims applies.

¶68. Again, our law is clear that a two-year statute of limitations applies to medical-malpractice claims. Section 15-1-36(2) provides:

> For any claim accruing on or after July 1, 1998, and except as otherwise provided in this section, no claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, institution for the aged or infirm, nurse, pharmacist, podiatrist, optometrist[,] or chiropractor for injuries or wrongful death arising out of the course of medical, surgical[,] or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered, and . . . in no event more than seven (7) years after the alleged act, omission or neglect occurred.

¶69. In determining whether the two-year medical-malpractice statute of limitations applies, this Court has previously stated: "the main issue [is] whether the tort arises out of the course of medical, surgical[,] or other professional services." *Chitty v. Terracina*, 16 So. 3d 774, 779 (¶12) (Miss. Ct. App. 2009). Here, it is clear that the conduct of Dr. Madakasira—which Collins alleged created the irresistible impulse in Irby to commit suicide and served as the basis for the tort claim—arose out of the course of professional psychiatric care rendered by Dr. Madakasira. Dr. Madakasira, in the course and scope of care as Irby's psychiatrist, met with Irby's conservators, executed an affidavit, and testified in court proceedings regarding Irby's best interests in terms of his mental health. In *Chitty*, this Court further stated that where the tort claim arises out of the course of medical, surgical, or other professional services, "whether [the medical provider's] alleged actions were intentional, or merely negligent, is not determinative." *Id*. The majority now departs from that reasoning, finding that intentional conduct cannot serve as the basis for a medical-malpractice action. Moreover, in doing so, the majority departs from the supreme court's explicit and repetitive characterization of the action in the instant case as one for medical malpractice.

¶70. Nothing in *Truddle* characterizes the cause of action as simply an intentional tort or removes the action from the medical-malpractice statute and its governing statute of limitations. The majority erroneously interprets *Truddle* as characterizing a claim against a physician for a patient's suicide as nothing more than an intentional tort. Rather, *Truddle* consistently characterizes the action as one for medical malpractice—to which a two-year statute of limitations applies.

¶71. The majority states that, "If Irby's death had not been the result of suicide, we would agree with the dissent that the medical-negligence action could be sustained." Citing *Truddle*, the majority reasons this is because "suicide constitutes 'an independent, intervening[,] and superseding event that severs the causal nexus between any wrongful action'" of Dr. Madakasira and Irby's death. This reasoning, however, conveniently omits the supreme court's qualifier to the foregoing statement, and thus patently ignores the supreme court's exception to this rule: the irresistible-impulse doctrine. "Nothing in Mississippi caselaw, *save the irresistible-impulse doctrine*, abrogates the general rule that suicide constitutes 'an independent, intervening and superseding event that severs the causal nexus between any wrongful action on the part of the defendant.' " *Id*. (emphasis added). "[T]he irresistible-impulse doctrine applie[s] as *an exception* to the general rule regarding suicide . . . ." *Id*. (emphasis added). It is an exception that applies to the instant medical-malpractice case.

¶72. The majority states that Collins's "suicide action must be based on an intentional tort" and thus, her "negligence claims do not state a cause of action for which relief can be granted and were correctly dismissed." Again, as discussed, the supreme court rejected this argument in *Singing River*. Both Collins's negligence claim and intentional-act claim are medical-malpractice claims. As such, it is unnecessary to apply the savings statute in the instant case, as both claims were already timely under the medical-malpractice statute of limitations.

¶73. While I do not consider the merits of Collins's complaint, I do find that both Collins's

36

claims—in accordance with *Truddle* and *Singing River*—were for medical malpractice. As such, I believe Collins's medical-malpractice claims were subject to a two-year statute of limitations. Therefore, I would also reverse and remand for this reason, notwithstanding the majority's application of the minor's saving statute. For the foregoing reasons, I respectfully dissent.

**IRVING, P.J., CARLTON AND WESTBROOKS, JJ., JOIN THIS OPINION.**